(December 5, 1985)

■ In the Matter of NATIONAL BASKETBALL ASSOCIATION, Petitioner, v NEW YORK STATE DIVISION OF HUMAN RIGHTS, Respondent.—Determination of the Commissioner of the State Division of Human Rights, dated February 12, 1985, which, after a hearing, found that petitioner had discriminated against complainant Sokol by refusing to rehire him as an NBA referee on the basis of a disability in violation of Executive Law § 296 (1) (a) (Human Rights Law), directed that he be offered employment as a referee with back pay to May 23, 1983, the date he was rejected, and awarded $5,000 damages for mental anguish and humiliation, unanimously annulled, on the law, without costs or disbursements, the petition granted and the Commissioner's order vacated.

Complainant Manny Sokol had been a National Basketball Association (NBA) referee for 13 years, from 1964 to 1977. Prior to commencement of the 1977-1978 basketball season, a standard physical examination disclosed that Sokol had an enlarged heart. As a result, he consulted his personal physician, Dr. Soiefer, who, after a physical examination, certified that he was physically fit to perform as a referee. However, in November 1977, six weeks after the examination, he suffered a myocardial infarction which required a 10-day confinement in intensive care. Under the existing collective bargaining agreement, he received full salary for the 1977-1978 season.

In September 1978, Sokol applied for benefits under an NBA disability insurance policy, which afforded disability payments for a five-year period. As required by the policy, Sokol submitted a physician's certification each year attesting to his inabil-

ity to work as a referee and declaring his permanent disability from gainful employment. The latest statement by Dr. Schaye, in September 1982, reported his physical impairment as "Moderate limitation of functional capacity; capable of clerical/administrative (sedentary*) activity" and opined that he was "totally disabled for gainful activity." The NBA also awarded Sokol a discretionary severance pay of $10,000 and a lump-sum pension payment, fully liquidating his pension account.

In September 1982, the same month the last certification of disability was filed, Sokol wrote to Darrell Garretson, Chief of Staff of NBA referees, advising that he was "willing to drop my disability with Guardian Insurance," which was about to lapse in any event, and expressing an interest in obtaining "some opening" with the NBA, especially since his disability payments were coming to an end. On October 27, 1982, Garretson responded that final decision "as to any type of employment, if it is available, must come after a review by our legal department."

In March 1983, Sokol was advised that his Social Security disability payments would terminate in May of that year. On April 8, 1983, he was examined by his personal cardiologist, Dr. Allen Unger, who concluded in a letter to then NBA Commissioner O'Brien, that, inasmuch as Sokol was "free of anginal symptoms," he was "physically fit to resume duties as a referee." On May 23, 1983, Scotty Stirling, NBA Vice-President of Operations, advised Sokol: "We have reviewed Dr. Unger's letter and all the other aspects of your case and in our judgment we don't feel it would be appropriate to rehire you for the NBA officiating staff."

Thereafter, on June 16, 1983, Sokol filed a complaint with the Division of Human Rights, charging discrimination in denying reinstatement on account of his disability. At the hearing, Garretson testified that complainant was rejected, not because of any disabling condition but, instead, for his style and manner of officiating when he had been a referee. Garretson claimed that Sokol had been an average referee during his prior tenure with the league and avoided making "unpopular" calls. In addition, he engaged in "histrionics * * * on the court"—showboating and antics in making calls, which did not conform to the "low profile" expected of NBA referees in their on-court performance.

At the close of the hearing, the Administrative Law Judge rejected the NBA claim that the decision not to rehire complainant was based upon their evaluation of his prior perfor-

mance and manner of officiating. In essence, the NBA maintained that his style did not conform to the approved standard by which referees were to maintain a low profile, thus placing principal focus on the skills and talents of the players. It was determined that this was a subterfuge to mask the actual reason for the rejection, namely, complainant's disabling condition, which, it was found, did not prevent him from reasonably performing the duties and activities of an NBA referee. As a result, the Commissioner found that there had been unlawful discrimination in violation of the Human Rights Law.

In a proceeding to review an administrative determination, the court's function is limited to deciding whether there is substantial evidence in the record to support the determination, a question of law for the court. *(300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 179-182.) Where there are charges of discrimination in violation of the Human Rights Law, the initial burden of establishing a prima facie case is upon the complainant. *(Matter of Auchenpaugh v General Elec. Co.,* 92 AD2d 680; *Matter of Rotterdam-Mohanasen Cent. School Dist. v State Div. of Human Rights,* 70 AD2d 727; *Matter of McGrath v New York State Div. of Human Rights,* 52 AD2d 1027.) Once proof has been adduced of an unlawful discriminatory practice, the burden of going forward shifts to the employer to establish that there existed "some independent legitimate reason which was neither a pretext for discrimination nor was substantially influenced by impermissible discrimination." *(Burlington Indus. v New York City Human Rights Commn.,* 82 AD2d 415, 417, *affd* 58 NY2d 983; *see also, Matter of Maloff v City Commn.,* 46 NY2d 908, 910; *Matter of Pace Coll. v Commission on Human Rights,* 38 NY2d 28, 40; *City of New York v Donnaruma,* 70 AD2d 856.) In order to make out a prima facie case, the complainant must demonstrate that (1) he is within the class to be protected; (2) he applied and was qualified for a position for which the employer had sought applicants; (3) despite his qualifications, he was rejected for the position; and (4) the position remained opened and the employer sought other qualified applicants. *(McDonnell Douglas Corp. v Green,* 411 US 792, 802.)

In our case, while there is no dispute that complainant, in terms of his disability, was a member of a protected class under the statute and his application to return to his former position had been denied, there is no substantial evidence in the record that his disability did not prevent him from performing in a reasonable manner as an NBA referee. (Execu-

tive Law § 292 [21].) The only proof bearing on the issue is the affirmation of complainant's cardiologist, Dr. Unger, who concluded that his "medical condition would not prevent him from performing the duties of a referee * * * in the manner customarily done by other Referees." Dr. Unger, however, did not appear at the hearing and could not be subjected to cross-examination. On petitioner's objection, the Administrative Law Judge ruled that the document would not be received to establish "any ultimate fact by itself."

While the "legal residuum rule" is no longer followed (see, *Matter of Eagle v Paterson,* 57 NY2d 831, 833; *300 Gramatan Ave. Assoc. v State Div. of Human Rights, supra,* p 180, n), under the circumstances of this case, we conclude that the hearsay affirmation of the physician, standing alone, is insufficient to amount to substantial evidence that complainant could reasonably perform the duties of an NBA referee. (See, *Matter of Eggleston v Richardson,* 88 AD2d 750.) Other than the statement in the affirmation that complainant underwent an exercise treadmill test, there is no reference to any medical tests sufficient to conclude, with a degree of medical certainty, that the disability was not job-related. While the doctor opined that he could perform in a manner "customarily done by other Referees," the underlying basis for the conclusion is not set forth.

In our view, considering the record as a whole and Sokol's continuous representations through 1982 that he was disabled from employment, it cannot be found that he sustained his burden of proving by substantial evidence that he was physically fit to fully perform as a professional basketball referee. Moreover, there was abundant proof that the NBA's refusal to reinstate him related to grounds other than his physical condition. To the extent his rejection was based upon a determination that his style and manner of officiating did not conform to current standards, in the absence of affirmative proof of discrimination, it was improper for the Commissioner to substitute his judgment for that of the employer as to the qualifications for a particular position. (See, *Matter of Sperry Rand Corp. v State Human Rights Appeal Bd.,* 46 AD2d 678; *Matter of Tony Nuzzo & Sons v State Div. of Human Rights,* 45 AD2d 921, 922; *Matter of New York Tel. Co. v Wethers,* 36 AD2d 541, 542.) Concur—Murphy, P. J., Sandler, Asch, Kassal and Ellerin, JJ.