■ NEW YORK STATE DIVISION OF HUMAN RIGHTS, on Complaint of MURRAY DEMBO, Respondent, v JOHNSON & HIGGINS, Petitioner

Complainant is an attorney who commenced employment with petitioner Johnson & Higgins, an insurance brokerage firm, in 1959. Hired as assistant to the chief counsel in the legal unit of petitioner's employee benefits plans department (EBPD), complainant's duties included drafting pension plans, preparing employee booklets and administrative manuals, filing plans with the Internal Revenue Service, and billing clients for services rendered.

The record indicates that throughout the course of his employment, complaint's professional ability and potential were unexceptional, and that after 10 years his work principally involved billing.

In 1973, complainant was transferred to the technical services unit (TSU) of the EBPD to handle the additional work anticipated with the imminent passage of the Employee Retirement Income Security Act (ERISA). Prior to the time of this transfer, the TSU had been staffed by only two attorneys. The bulk of the legal work generated by the enactment of ERISA consisted of drafting, preparing, and clearing plans to be filed with the Internal Revenue Service and the Department of Labor. The drafting was largely accomplished by matching previously drafted clauses to plan specifications prepared by consultants, and then integrating the clauses into a unified document.

During his tenure at the TSU, complainant's two immediate supervisors agreed that he was good at this type of plan drafting, which dominated the unit's workload. However, the TSU was also charged with analytical work, client consultation, and problem solving.

In 1977, another attorney, Henry Savath, who had previously been on the EBPD consulting staff, joined the TSU staff. Savath's performance was consistently evaluated as "above average" or "superior" and improving.

By 1978, the additional work created by the enactment of ERISA was abating because most of the employee plans had been redrafted to conform with the statute's requirements, and the focus of TSU's work began to change in a manner that required greater client contact and complex analytical

legal skills. This work could be accomplished by fewer attorneys and, in July 1978, a member of the unit was discharged because of "personnel redundancy". Significantly, he was 31 years old, and had been chosen because his performance lagged behind that of the others.

In November 1980, petitioner determined that the TSU, which then consisted of the supervisor and two staff attorneys, complainant and Savath, needed further reduction, and a decision was made to eliminate complainant's position. Before this decision could be implemented, Savath suddenly left petitioner's employ for a similar position elsewhere, at a substantial increase in salary. A search for a replacement for Savath was commenced and, in March 1981, Robert Danch was hired. The 31-year-old Danch had, for the six years preceding his recruitment by petitioner, supervised a legal unit in a employee benefits consulting firm, where his responsibilities included overseeing a staff of four paralegals who drafted and amended employee pension and profit-sharing plans. Danch's work quickly earned praise and his first evaluation, written after he had been there nine months, included a comment that he had "stepped into a 'void' within the Unit left by the departure of his predecessor, Henry Savath."

After several failed attempts to either relocate complainant elsewhere within the firm or persuade him to take early retirement, the 60-year-old complainant was discharged in December 1981. In March 1982, he filed a complaint with the State Division of Human Rights (the Division) pursuant to Executive Law § 297 (4) (a) (Executive Law art 15 [Human Rights Law]), alleging that petitioner had engaged in unlawful age discrimination. A hearing was held on several dates commencing in July 1983 and ending in February 1984. In July 1986, the Administrative Law Judge (ALJ) issued his recommended findings of fact, opinion, decision and order, which upheld the complaint, directed that petitioner rehire complainant as an attorney assigned to the TSU with back pay to January 1, 1982, and awarded complainant $20,000 in compensatory damages for anxiety, depression, and mental anguish. By order dated October 7, 1986, the Division sustained the complaint and adopted verbatim the ALJ's recommendations. We now grant petitioner's application to annul the determination and vacate the order.

Judicial review of an administrative agency's determination is limited to a consideration of whether it is supported by substantial evidence in the record as a whole. (300 Gramatan Ave. Assocs. v State Div. of Human Rights, 45 NY2d 176, 181;

Executive Law § 298.) As so limited, the court has a "genuine judicial function and does not confirm a determination simply because it was made by such an agency". *(Supra,* at 181.) Rather, the judicial review must ascertain whether there is "proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably—probatively and logically". *(300 Gramatan Ave. Assocs. v State Div. of Human Rights, supra,* at 181.)

We find that the within record fails to provide substantial evidence supporting the Division's findings of age discrimination. The evidence establishes that complainant's professional abilities were in the areas of billing and plan drafting, and that there occurred a change in the nature of petitioner's work, and a concomitant need to reduce staff, which constituted an "independent legitimate reason [for complainant's discharge] which was neither a pretext for discrimination nor was substantially influenced by impermissible discrimination" *(Burlington Indus. v New York City Human Rights Commn.,* 82 AD2d 415, 417, *affd* 58 NY2d 983). Indeed, the first TSU member to be terminated in the post-ERISA cutbacks was 31 years of age. The evidence further supports a finding that Robert Danch was hired not to replace complainant, but Henry Savath.

We therefore conclude that a view of the record as a whole fails to disclose any affirmative proof of discrimination, and instead provides evidence that complainant's discharge was not related to his age. With respect to complainant's qualifications for the position vacated by Henry Savath, it was improper for the Division to substitute its judgment for that of petitioner employer on such a matter. *(See, Matter of National Basketball Assn. v New York State Div. of Human Rights,* 115 AD2d 365, 368; *Matter of Sperry Rand Corp. v State Human Rights Appeal Bd.,* 46 AD2d 678.) Concur—Kupferman, J. P., Carro, Kassal, Rosenberger and Ellerin, JJ.