■ CITIBANK, N. A., Appellant, v NEW YORK STATE DIVISION OF HUMAN RIGHTS et al., Respondents. [643 NYS2d 68] —In this proceeding, pursuant to Executive Law § 298, transferred to this Court by order of the Supreme Court (Stanley L. Sklar, J.), entered December 29, 1994, to set aside the order of the Commissioner of the New York State Division of Human Rights, dated June 17, 1994, which determined that petitioner Citi-

bank discriminated against its employee Catherine S. Hanna on the basis of her age, and awarded compensatory damages and back pay, the petition to set aside the order in its entirety is unanimously granted, without costs.

Respondent Catherine S. Hanna was fifty-eight years old when, after thirty-six years' employment at Citibank in various positions, she was abruptly dismissed on September 5, 1989. According to Citibank, Hanna was fired because she refused to follow a reasonable work order that involved reporting for a short time to another branch to help open new student accounts. According to Hanna, she was ready to comply with the order, but did not do so as directed because of a possible conflict with several personal appointments. Hanna claimed that, having only received the order from a supervisor át the end of the Friday prior to Labor Day weekend, with instructions to report on the Tuesday after Labor Day, she arranged to meet with another supervisor (Peter Van Eyck) early Tuesday to see if he could work out the conflict before she went to the other branch. On Tuesday morning, however, she first encountered the supervisor who had given her the order but was unaware of Hanna's arrangement; this supervisor warned her that she had half an hour to report to her new assignment, or her refusal ("insubordination") could be grounds for termination. Although Hanna claims that she tried to explain her situation, her refusal was reported to the branch manager, who told her she was fired. She never spoke to Van Eyck, who was occupied in his office, and he did not testify at the hearing.

While the hearing record discloses an unfortunate course of events that culminated in Hanna's discharge, the Commissioner's finding that Citibank engaged in age discrimination is not supported by substantial evidence and must be set aside (*see, Matter of Consolidated Edison Co. v New York State Div. of Human Rights*, 77 NY2d 411, 417; *300 Gramatan Ave. Assocs. v State Div. of Human Rights*, 45 NY2d 176, 179-180). At the administrative hearing, Hanna had the initial burden of establishing a *prima facie* case of discrimination, whereupon Citibank had the burden to demonstrate a legitimate nondiscriminatory reason for termination. Once Citibank articulated such a reason, Hanna had to show by a preponderance of the evidence that the reason alleged was merely a pretext for discrimination (*see, McDonnell Douglas Corp. v Green*, 411 US 792, 804; *Ioele v Alden Press*, 145 AD2d 29, 36-37).

The evidence adduced at the hearing fails to support even a finding that Hanna established a *prima facie* case of discrimination. While she was able to show that she was within a

protected group, that she was qualified for her position, and that she was in fact discharged, she did not demonstrate that the discharge occurred under circumstances giving rise to an inference of discrimination (*see, Lopez v Metropolitan Life Ins. Co.*, 930 F2d 157, 161 [2d Cir], *cert denied* 502 US 880; *Thermidor v Beth Israel Med. Ctr.*, 683 F Supp 403, 409-410 [SD NY]).

According to the Commissioner's order, the finding that termination was motivated by discriminatory reasons was based on the fact that when Branch 28, at which Hanna had worked for a number of years, was closed in January 1989, she was the oldest employee and the only one (of twenty-three employees) who was not permanently assigned elsewhere; instead, she received a temporary assignment to Branch 50. Using these two factors to support a finding of discrimination, however, necessarily means that long before Hanna was fired, her supervisors at Branch 28 harbored the discriminatory intention that was executed much later by supervisors at Branch 50, an inference that is without support in the record.

In any event, the factors cited by the Commissioner do not withstand even superficial scrutiny, since another female employee at Branch 28 who was only a year younger than Hanna did receive a permanent reassignment. And, while Hanna may have been the only one who did not receive a permanent reassignment, she herself admitted that she did nothing to pursue one. Her failure to do so may be attributed, according to her own testimony, to her certainty that she would ultimately receive some assignment—a belief confirmed at the hearing by her Branch 28 supervisor—as well as to her pre-existing plans to pursue another career, in alcoholism counseling, which in fact she has successfully done since her termination at Citibank. She seems to have made her intentions known on an August 1989 performance evaluation form, and the appointments she was intent on keeping during the week of September 5, 1989, were interviews for education programs in this new field. Hanna testified at the hearing that, prior to her termination, she had intended to take such courses that fall.

Further contradicting the inference of discrimination is the favorable performance evaluation Hanna received less than a month before her termination, which was completed by the same personnel involved in her discharge and particularly commended her ability to be flexible and learn new tasks. Finally, notwithstanding respondents' emphasis on the "temporary" nature of Hanna's reassignment to Branch 50, there was undisputed testimony that she could have remained in that capacity until retirement.

The only other factor to which respondents point in support of the Commissioner's finding is that Hanna was fired "on the spot" rather than suspended pending investigation. While the Citibank employee pamphlet that includes a section on disciplinary problems and procedures does describe a multi-step process involving investigation, the bank employees explained that Hanna's conduct needed no investigation. Her implacable refusal to follow a reasonable work order was considered an act of insubordination justifying immediate discharge. According to these employees, such conduct cannot be tolerated from any worker because it potentially jeopardizes business operations. While we may disagree with the action taken and the manner in which it was taken, our function is not to substitute our business judgment for that of the employer (*New York State Div. of Human Rights v Johnson & Higgins*, 140 AD2d 214, 217, *lv denied* 72 NY2d 807). Rather, we are confined to consider whether the finding of discrimination is supported by substantial evidence.

Other than the factors already cited, Hanna could point to no instances or course of conduct or comments by any Citibank employee—directed toward her or another older employee—that suggest age discrimination (*see, e.g.*, *Wooten v New York Tel. Co.*, 485 F Supp 748, 759 [SD NY]; *Matter of Pace Coll. v Commission on Human Rights*, 38 NY2d 28, 39-40). Indeed, there is nothing else in the record that could remotely be construed to demonstrate that age discrimination was the real reason for Hanna's firing. In this regard, we note that there was no evidence as to the ages of the employees at Branch 50.

Even if we were to find that a *prima facie* case was established, respondents concede on appeal that Citibank proffered a legitimate business reason for Hanna's termination. Hanna's burden of proof then was to show by a preponderance of the evidence that this reason was merely a pretext for discrimination, and, on the evidence cited above, this burden clearly was not met. Concur—Murphy, P. J., Milonas, Nardelli and Tom, JJ.