**Allen EPSTEIN, Plaintiff,**

v.

**KALVIN–MILLER INTERNATIONAL, INC., Defendant.**

No. 96 Civ. 8158(PKL).

United States District Court, S.D. New York.

Oct. 15, 1998.

Jeffrey M. Bernbach, Jason Bernbach, New York City, for Plaintiff.

Clifton, Budd & DeMaria, LLP, New York City, Roy W. Gerke, of counsel, for Defendant.

## OPINION AND ORDER

LEISURE, District Judge.

Plaintiff Allen Epstein brings this action against his former employer, Kalvin–Miller International, Inc. ("Kalvin–Miller"), alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, the Age Discrimination In Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 623(a)(1)-(2), and the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law §§ 290, *et seq.* Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendant moves for summary judgment in its favor as to all counts averred by plaintiff.

For the reasons stated in this Opinion, defendant's motion for summary judgment is DENIED.

## I.  Standard for Summary Judgment

A moving party is entitled to summary judgment if the Court determines no genuine issue of material fact exists to be tried and the party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56; *see also Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 128 (2d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of showing no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995) (citation omitted); *see also Scottish Air Int'l, Inc. v. British Caledonian Group, PLC*, 81 F.3d 1224, 1231 (2d Cir.1996).

The Court's function in adjudicating summary judgment motions is not to try issues of fact, but instead to determine whether there are such issues. *See Sutera v. Schering Corp.*, 73 F.3d 13, 15–16 (2d Cir.1995). In determining whether genuine issues of material fact exist, the Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Holt*, 95 F.3d at 129.

Because this case involves allegations of discriminatory discharge, an additional consideration applies. The Court "must be cautious about granting summary judgment to an employer when, as here, its intent is at issue." *Gallo v. Prudential Residential Serv. Ltd. Partnership*, 22 F.3d 1219, 1224 (2d Cir.1994) (citations omitted); *see also Maresco v. Evans Chemetics*, 964 F.2d 106, 113 (2d Cir.1992).

## II.  Facts of the Case

Applying the principles set forth above, the facts of the instant case are as follows.

Plaintiff was born in June 1937. In 1984, he was diagnosed with coronary artery disease and hypertensive and atherosclerotic heart disease. Plaintiff's condition requires him to take nine different medications and limits his ability to walk and engage in strenuous physical activity.

In August 1986, Kalvin–Miller, a commercial insurance broker, hired plaintiff as its

Vice–President of Finance, responsible for the company's financial and accounting reporting and various supervisory duties relating to office management, including oversight of human resources and the office computer systems. Personnel at Kalvin–Miller were aware of plaintiff's heart condition at the time of his hiring.

In 1987, Kalvin–Miller was acquired by Whitehall Financial Group. Soon after completion of the acquisition, plaintiff was promoted to Senior Vice–President of Finance, a position functionally equivalent to chief financial officer. In the new position, plaintiff became a member of Kalvin–Miller's executive committee, was regularly invited to Kalvin–Miller/Whitehall Financial Group board meetings and reported directly to Kalvin–Miller's chief executive officer, David Moross.

In mid–1992, plaintiff suffered an angina attack, which forced him to miss a board meeting. Moross and the board became concerned plaintiff might die. Based on this concern and on a desire to have a chief financial officer with more mergers and acquisitions experience than plaintiff, the board authorized Moross to hire a new chief financial officer. Deposition of David Moross, dated July 29, 1997, at 20. Consequently, three to four months after plaintiff's cardiac incident, Moross contacted Michael Sabanos about the possibility of becoming chief financial officer. Sabanos was hired as chief financial officer in June 1993.

Following the hiring of Sabanos, plaintiff reported to Sabanos instead of to Kalvin–Miller's CEO. In addition, Sabanos began to assume responsibilities previously held by plaintiff, including supervision of the company's financial reporting and administrative functions. As more time passed, Sabanos took on additional duties of plaintiff, including involvement in oversight of human resources and the company's computer systems. Sabanos also replaced plaintiff as an invitee to board meetings. Plaintiff retained direct supervisory duties over only two employees.

In August 1995, Kalvin–Miller was sold to American Phoenix Corporation ("American Phoenix"), which had previously acquired numerous other insurance brokerages. A few months after the acquisition, Celia Walsh, Kalvin–Miller's financial reporting manager and a subordinate of plaintiff, resigned. Plaintiff agreed to assume many of the duties previously held by Walsh, in part because many of his other duties had been taken over by Sabanos. Plaintiff offered to renegotiate his salary to reflect his then-current responsibilities, but he received no response from superiors. Plaintiff's annual salary of approximately $130,000 and other benefits remained unchanged.

In December 1995, plaintiff was diagnosed with type 2 diabetes, a form of diabetes in which the body's ability to utilize the insulin it produces is impaired. Plaintiff takes additional medication for this condition. Plaintiff informed executives of the diagnosis, including, among other persons, Sabanos and the chief financial officer of American Phoenix.

Following the takeover of Kalvin–Miller by American Phoenix, Martin Vaughan, chief executive officer of American Phoenix, became Kalvin–Miller's CEO. Vaughan, along with Sabanos and another executive, proceeded to conduct an organizational review of Kalvin–Miller with the goal of downsizing the company work force. In the course of the review, the executives considered the gender, race, age and disability status of employees. Affirmation of Jeffrey M. Bernbach, dated January 22, 1998, Ex. 7.

Kalvin–Miller instituted a reduction-in-force plan in January 1996, pursuant to which fifteen employees were discharged. Of the fifteen, twelve were over the age of forty and seven were over fifty years of age. As part of the reorganization, two senior executive positions other than that of Senior Vice–President of Finance were eliminated. The individuals in those positions, ages forty and thirty-eight, were offered new senior executive positions by the company.

On March 7, 1996, plaintiff was discharged. On March 25, 1996, Kalvin–Miller hired a thirty-three year old individual with no disabilities as financial reporting manager, at a salary of $60,000 per year. Plaintiff was not offered a new position with the company.

## III. Discussion

### A. *ADA and ADEA Claims*

Plaintiff's ADA and ADEA claims are subject to the burden-shifting analysis set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir.1998) (applying *McDonnell Douglas* analysis to ADA claims); *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 83 (2d Cir.1990) (applying *McDonnell Douglas* analysis to ADEA claims). Pursuant to that analysis, plaintiff must proffer facts sufficient to establish a *prima facie* case that the circumstances of his discharge give rise to an inference of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If plaintiff satisfies that threshold burden, then the burden of production shifts to defendant to proffer a legitimate, non-discriminatory reason for the discharge. *Id.* at 802, 93 S.Ct. 1817. The burden of persuasion then rests with plaintiff to persuade the factfinder that the employer's explanation is a pretext for discrimination. *Id.* at 803–04, 93 S.Ct. 1817.

Defendant contends that plaintiff has failed to establish a *prima facie* case of discrimination. In addition, defendant argues that even if plaintiff is found to have established such a case, plaintiff has, in any case, failed to proffer evidence sufficient to overcome defendant's explanation that plaintiff was discharged pursuant to a reduction-in-force plan. As explained further below, the Court finds that plaintiff has established a *prima facie* case of age and disability discrimination and has raised a genuine issue of material fact as to whether defendant's explanation is a pretext for such discrimination.

#### 1. *Prima Facie Case*

■ The elements of a *prima facie* case are substantially identical under the ADA and ADEA. Plaintiff must establish that (i) he is a member of a protected class (*i.e.*, under the ADA, that plaintiff is disabled, and, under the ADEA, that plaintiff is forty years of age or older); (ii) he is qualified to perform the essential functions of the employment position at issue; and (iii) the circumstances of his discharge from the position give rise to an inference of discrimination. *See Reeves v. Johnson Controls World Serv., Inc.*, 140 F.3d 144, 149–50 (2d Cir.1998); *Sutera*, 73 F.3d at 16.

Defendant moves for summary judgment that plaintiff has failed to establish a *prima facie* case of discrimination. With respect to plaintiff's ADA claim, defendant contends plaintiff has not satisfied the first prong above because he has failed to establish he suffers from a disability. In addition, as to both the ADA and ADEA claims, defendant argues plaintiff has not satisfied the third prong above because he has failed to show the circumstances of his discharge give rise to an inference of discrimination. The Court addresses defendant's arguments *seriatim.*

#### a. *"Disability" under the ADA*

Defendant contends that neither plaintiff's heart disease nor his type 2 diabetes rise to the level of a "disability" under the ADA. The Court disagrees.

■ The ADA defines "disability" as, among other things, "a physical or mental impairment that substantially limits one or more of the major life activities of such individual". 42 U.S.C. § 12102(2). Plaintiff's heart disease clearly qualifies as a "disability" under this definition. Plaintiff is required to take a regimen of medications to treat his heart disease. Affidavit of Arthur Weisenseel, M.D., dated January 21, 1998, ¶ 6. Failure to take the medication would, according to plaintiff's treating physician, have grave, and potentially fatal, consequences for plaintiff. *Id.*, ¶ 11. Moreover, even as medically treated, plaintiff's heart disease limits plaintiff's ability to engage in the major life activity of walking and to undertake other forms of strenuous activity. *Id.*, ¶ 7. Finally, the regulations promulgated by the Equal Employment Opportunity Commission explaining the ADA's definition of "disability", as well as the legislative history to the ADA, confirm that heart disease is properly classified as a "disability". *See Finley v. Cowles Bus. Media*, No. 93 Civ. 5051, 1994 WL 273336, at 2–3 (S.D.N.Y. June 20, 1994).

Plaintiff's type 2 diabetes also qualifies as a "disability" under the ADA. Type 2 diabetes, which affects plaintiff's use of the insulin his body produces, requires medication. *Id.*, ¶ 9. Failure by plaintiff to take the necessary medication would have a significant adverse effect on plaintiff's health and could prove fatal. *Id.*, ¶ 11. Accordingly, because the Court must consider the effect the condition would have on plaintiff absent medication, *see Schaefer v. State Ins. Fund*, 95 Civ. 0612, 1998 WL 126061, at *5–6 (S.D.N.Y. March 19, 1998), plaintiff's type 2 diabetes qualifies as a "disability" under the ADA.

In support of its argument that plaintiff is not disabled, defendant cites plaintiff's deposition testimony that none of his major life activities have been impaired by either condition. Defendant overlooks, however, that plaintiff's testimony appears to be based on the assumption that he is receiving proper treatment. Moreover, defendant ignores testimony by plaintiff's attending physician that plaintiff is dependent on medication for his well-being. Accordingly, considering the evidence in the light most favorable to plaintiff, as the Court must, the Court finds plaintiff's deposition testimony does not warrant granting summary judgment in favor of defendant on this issue.

b. *Inference of Discrimination under the ADA and ADEA*

Defendant further contends that plaintiff has not established a *prima facie* case because he has failed to adduce evidence raising an inference that his discharge was due to age or disability discrimination. The Court disagrees.

"The burden of establishing a *prima facie* case [of discrimination] is not onerous, and has been frequently described as minimal." *Scaria v. Rubin*, 117 F.3d 652, 654 (2d Cir.

1997) (per curiam) (citations omitted); *see also Greenway*, 143 F.3d at 52 ("To make out a *prima facie* case is not a demanding burden."). In the instant case, plaintiff has met that *de minimis* requirement. Plaintiff has adduced evidence that, at the time of his discharge, plaintiff functionally held the position of financial reporting manager instead of the position of Senior Vice–President of Finance he had previously held.[1] Within three weeks of plaintiff's discharge, an individual twenty-five years younger than plaintiff and without any apparent disability was hired for the financial reporting manager position. The timing of the discharge and hiring, and the disparity in age and absence of disability of the new employee, suffice to establish a *prima facie* case of discrimination under the ADA and ADEA. *See Viola v. Philips Med. Sys.*, 42 F.3d 712, 716–17 (2d Cir.1994); *see also Fisher v. Vassar College*, 70 F.3d 1420, 1450 (2d Cir.1995).

Accordingly, the Court finds plaintiff has established each of the elements of a *prima facie* case of age and disability discrimination pursuant to the *McDonnell Douglas* analysis. Summary judgment in favor of defendant on this issue would, therefore, be inappropriate.

2. *Legitimate, Non–Discriminatory Explanation*

Because plaintiff has established a *prima facie* case, defendant must come forward with a legitimate, non-discriminatory explanation for plaintiff's discharge. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Like plaintiff's initial burden, defendant's burden at this stage is light. *Greenway*, 143 F.3d at 52. Defendant "must simply articulate an explanation that, if true, would connote lawful behavior." *Id.* (citation omitted).

Defendant's proffered explanation is that plaintiff was discharged pursuant to a reduc-

---

1. Plaintiff proffers evidence that he was effectively demoted to the position of financial reporting manager in 1993 following the hiring of Sabanos as chief financial officer—a position plaintiff argues is functionally equivalent to Senior Vice–President of Finance. Defendant responds that any claim as to wrongful conduct by defendant in demoting plaintiff is time-barred and, in any case, is irrelevant to plaintiff's allegations as to his eventual discharge. The Court does not understand plaintiff's averments about his alleged demotion to constitute a separate and distinct claim of discrimination. Rather, it appears that the facts concerning the demotion are offered to address the quite pertinent issue of which position plaintiff held at the time of discharge. The Court does not, therefore, find it necessary to address whether a discrimination claim pertaining to the demotion would be time-barred or otherwise would fail to state a claim.

tion-in-force plan implemented by Kalvin–Miller following its acquisition by American Phoenix. Defendant alleges that American Phoenix routinely implements such plans for insurance brokerages it acquires and further argues that the plan was particularly appropriate for Kalvin–Miller due to profitability concerns.

Regarding plaintiff's discharge in particular, defendant disputes plaintiff's contention that he was demoted from a senior management position to the position of financial reporting manager. Defendant notes specifically that plaintiff's title, salary and benefits did not change despite the alleged demotion. Defendant contends plaintiff's senior management position was rendered redundant by the takeover and that plaintiff was, therefore, discharged.

The Court finds defendant has satisfied its *de minimis* burden of proffering a legitimate, non-discriminatory reason for plaintiff's discharge. *See Viola,* 42 F.3d at 716–17.

### 3. *Pretext*

■ Once steps one and two of the *McDonnell Douglas* analysis have been fulfilled, the ultimate burden of persuasion rests with plaintiff to show there is a genuine issue of material fact as to whether defendant's explanation for his discharge is a mere pretext for discrimination. *Id.* at 716.

The Court finds plaintiff has met that burden. A key factual question in dispute is whether plaintiff was considered to have been a senior executive at the time of his discharge or, instead, was considered to have held the lower-level position of financial reporting manager. If plaintiff was considered to have held the higher position, then defendant's explanation that plaintiff was discharged because his senior position was rendered redundant by the takeover may prove a persuasive explanation for the discharge of plaintiff.

If, in contrast, plaintiff was considered to have been a lower-level financial reporting manager, then defendant's explanation would not, in fact, explain plaintiff's discharge. To the contrary, the facts would show defen-

dant's representatives replaced plaintiff with a much younger employee with no disabilities less than three weeks after plaintiff's discharge, raising an inference of age and/or disability discrimination. *See Stratton v. Department for the Aging,* 132 F.3d 869, 880 (2d Cir.1997); *Montana v. First Fed. Sav. & Loan Ass'n of Rochester,* 869 F.2d 100, 105 (2d Cir.1989).

Moreover, plaintiff has submitted two additional pieces of evidence that raise a genuine issue of material fact as to the motive of defendant's representatives in terminating plaintiff. First, plaintiff has submitted evidence that the persons responsible for making discharge decisions as part of the reduction in force considered the age, gender, race and disability status of employees. Defendant has not explained how these considerations affected discharge decisions generally or in the particular case of plaintiff. Second, plaintiff has submitted evidence that several of the senior executives whose positions were allegedly rendered redundant by the takeover were offered equivalent replacement positions, while defendant was not. Notably, both executives were significantly younger than plaintiff and apparently did not suffer from any disability. Such facts could also reasonably be construed to support a finding that defendant's explanation for plaintiff's discharge is merely a pretext for discrimination. *See, e.g., Cronin,* 46 F.3d at 204.

In sum, "the conflict between the plaintiff's evidence [of discrimination] … and the employer's evidence of a nondiscriminatory reason reflects a question of fact to be resolved by the factfinder after trial." *Cronin,* 46 F.3d at 203. Summary judgment in favor of defendants on this issue would, therefore, be inappropriate.

### B. *NYHRL Claim*

The legal standards applicable to plaintiff's claim under the NYHRL are substantially similar to those which apply to plaintiff's federal claims. *See Parker v. Sony Pictures Entertainment, Inc.,* No. 97 Civ. 264, 1998 WL 574388, at *8 (S.D.N.Y. Sept. 4, 1998) (ADA); *Ritter v. Medical Arts Ctr. Hosp.,* No. 94 Civ. 5883, 1997 WL 45349, at *4 (S.D.N.Y. Feb. 5, 1997) (ADEA). According-

ly, summary judgment in favor of defendant as to plaintiff's state law claim would be inappropriate for the reasons already stated regarding plaintiff's federal claims.

### CONCLUSION

For the reasons stated above, defendant's motion for summary is hereby DENIED. The parties shall appear for a pre-trial conference before this Court at the United States Courthouse, 500 Pearl Street, New York, New York, on November 20, 1998, at 10:00 a.m.

**SO ORDERED.**