Allen EPSTEIN, Plaintiff,

v.

KALVIN–MILLER INTERNATIONAL, INC., Defendant.

No. 96 Civ. 8158 (PKL).

United States District Court, S.D. New York.

Nov. 1, 2000.

Jeffrey M. Bernbach, Jason Bernbach, New York City, for Plaintiff.

Brian J. Clark, Clifton, Budd & DeMaria, LLP, New York City, George P. Stasiuk, Rutherford, NJ, pro hac vice, for Defendant.

### *OPINION AND ORDER*

LEISURE, District Judge.

Plaintiff Allen Epstein commenced this action on October 31, 1996 against his former employer, Kalvin–Miller International, Inc. ("Kalvin–Miller"), alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 623(a)(1)-(2), and the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law §§ 290, *et seq.* On October 15, 1998, the Court denied defendant's motion for summary judgment on all three statutory causes of action. *See Epstein v. Kalvin–Miller Int'l, Inc.,* 21 F.Supp.2d 400 (S.D.N.Y.1998) [hereinafter, *"Epstein I"*]. On June 21, 2000, the Court dismissed plaintiff's ADA claim with prejudice, but denied defendant's motion to dismiss plaintiff's NYHRL claim. *See Epstein v. Kalvin–Miller Int'l, Inc.,* 100 F.Supp.2d 222 (S.D.N.Y.2000) [hereinafter, *"Epstein II"*]. Now before the Court is defendant's Motion *In Limine* to exclude certain evidence and to bifurcate the trial. Defendant's Motion is granted in part and denied in part.

## BACKGROUND

The Court has previously discussed the facts of this case in some detail. *See Epstein I*, 21 F.Supp.2d at 401–02. Accordingly, only those facts relevant to the instant motion are recited herein. In plaintiff's remaining claims, he alleges that when defendant fired him in 1996, it did so based on disability and age discrimination in violation of the NYHRL and the ADEA, respectively.

Now before the Court is defendant's Motion *In Limine* to: 1) Exclude "all evidence, except such evidence as has been stipulated to, regarding plaintiff's medical condition and any resulting disability"; 2) Bar "the introduction of any evidence regarding alleged discriminatory remarks made by individuals who are not involved in the decision to terminate plaintiff's employment"; 3) Bar "the introduction of any evidence regarding the ages or disability status of current or former defendant employees"; and 4) "Birfurcat[e] the trial in this matter into liability and damage phases." Defendant's Motion *In Limine*. [hereinafter, "Motion"].

## DISCUSSION

### I. Evidence of Plaintiff's Medical Condition

■ In the parties's joint Amended Pretrial Order, the parties stipulated that "at the time of plaintiff's termination he was 'disabled' under the New York State Executive Law due to his diabetes and heart conditions." Pretrial Order [hereinafter, "PTO"], Undisputed Fact # 18. "Under federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court." *PPX Enterprises, Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 123 (2d Cir.1984) (quoting *Brown v. Tennessee Gas Pipeline Co.*, 623 F.2d 450, 454 (6th Cir.1980)). "A district court is entitled to disregard a stipulation if to accept it would be manifestly unjust or if the evidence contrary to the stipulation is substantial." *Id.* However, in *Epstein II*, the Court found that "resolving all ambiguities in favor of plaintiff, ... plaintiff's type 2 diabetes and heart disease, even as treated, remain 'medical' disabilities within the meaning of the NYHRL." 100 F.Supp.2d at 229–30. Therefore, the Court will accept the parties' stipulation as a convenient means to narrow the issues to be decided at trial.[1]

■ Defendant now requests that the Court exclude evidence of plaintiff's medical condition, except that to which the parties stipulated. Defendant argues that further evidence regarding plaintiff's disability would be irrelevant, highly prejudicial, and cumulative and should be excluded under Rule 403 of the Federal Rules of

1. Plaintiff argues that the stipulation is "superfluous" given the Court's statement in *Epstein I* that "resolving all ambiguities in favor of plaintiff," plaintiff's medical conditions are "disabilities within the meaning of the NYHRL." 100 F.Supp.2d at 229–30. Plaintiff believes the Court's statement to be the "law of the case" that will govern at trial. *See* Plaintiff's Memo at 5, FN 7. Plaintiff misapprehends the nature of summary judgment. As the Court explained in *Epstein I*, the "court's function in adjudicating summary judgment motions is not to try issues of fact, but instead to determine whether there are such issues. In determining whether genuine issues of material fact exist, the Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party." 21 F.Supp.2d at 401. *See also Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 38 (2d Cir.1994) (On summary judgment, the trial court's "determination of whether the circumstances give rise to an inference of discrimination must be a determination of whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive. It is not the province of the summary judgment court itself to decide what inferences should be drawn."). At trial, plaintiff would not have the benefit of having all ambiguities resolved and all reasonable inferences drawn in his favor and would have the burden of proving his case by a preponderance of the evidence. Therefore, the stipulation is not superfluous. Rather, the stipulation relieves plaintiff of his burden of proving that he was disabled under the NYHRL.

Evidence. *See* Defendant's Memorandum of Law in Support of its Motion *In Limine* [hereinafter, "Defendant's Memo"] at 8–9.

Evidence of plaintiff's medical condition is relevant to one element of plaintiff's prima facie case. Plaintiff's NYHRL claim is analyzed under the burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Song v. Ives Laboratories, Inc.,* 957 F.2d 1041, 1046 (2d Cir.1992) (citing *Matter of Miller Brewing Co. v. State Div. of Human Rights,* 66 N.Y.2d 937, 939, 498 N.Y.S.2d 776, 489 N.E.2d 745, 747 (1985)). Under the McDonnell Douglas analysis, a plaintiff must first prove by a preponderance of the evidence a prima facie case of disability discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. The New York Court of Appeals has held that to establish a prima facie case of disability discrimination under the NYHRL, a plaintiff must show that he "suffers from a disability and the disability caused the behavior for which the individual was terminated." *McEniry v. Landi,* 84 N.Y.2d 554, 558, 620 N.Y.S.2d 328, 644 N.E.2d 1019 (1994) (holding that petitioner made out a prima facie case where petitioner was alcoholic and was fired because of absenteeism that was the result of his alcoholism). However, in cases where the plaintiff was not fired as the result of identifiable conduct, as is the case here, New York courts have held that a plaintiff can make out a prima facie case by showing that 1) he is disabled under the NYHRL; 2) he was in fact discharged; 3) he was qualified for the position; and 4) either that (a) he was replaced by a person who did not have alleged disability; or (b) he was discharged under circumstances that gives rise to an inference of discrimination. *See Delta Air Lines v. New York State Div. of Human Rights,* 229 A.D.2d 132, 652 N.Y.S.2d 253, 258 (First Department 1996); *Citibank, N.A. v. New York State Div. of Human Rights,* 227 A.D.2d 322, 643 N.Y.S.2d 68 (First Dept.1996). *See also Song,* 957 F.2d at 1046.

Once plaintiff has successfully established a prima facie case, the burden of production shifts to the defendant to "demonstrate that the disability prevented the employee from performing the duties of the job in a reasonable manner or that the employee's termination was motivated by a legitimate nondiscriminatory reason." *McEniry,* 84 N.Y.2d at 558, 620 N.Y.S.2d 328, 644 N.E.2d 1019; *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the defendant meets this burden, then the burden "returns to the plaintiff, who ultimately must establish by a preponderance of the evidence that the nondiscriminatory reasons proffered by the defendant are a pretext for discrimination." *Song,* 957 F.2d at 1045.

Specifics about plaintiff's medical conditions are relevant only to the first element in plaintiff's case, that he is disabled under the NYHRL. Given that the parties have stipulated that due to his heart condition and diabetes, plaintiff was disabled under the NYHRL at the time that he was fired, any further evidence of defendant's medical condition to prove the disability element of plaintiff's prima facie case would be a "needless presentation of cumulative evidence." Fed.R.Evid. 403.

Plaintiff argues that his medical condition is also relevant to prove that defendant's stated reason for firing plaintiff is pretextual. *See* Memorandum in Opposition to Defendant's Motion *In Limine* [hereinafter, "Plaintiff's Memo"] at 15–16. Plaintiff argues that the jury "in weighing the ultimate issue of whether discrimination occurred could easily base its decision not only on the fact that plaintiff suffered from certain disabilities, but on the extent to which he suffered from them as well." Plaintiff's Memo at 16. In other words, plaintiff argues that the jury could infer that the more disabled a plaintiff is, the more likely he is to have been the victim of discrimination. Plaintiff offers no case law to support this inference.

The Court is persuaded by defendant's observation that such an inference would be patently unfair, as it would allow a jury to "all things being equal" assume that a paraplegic plaintiff is more likely to have been the victim of discrimination than a "similarly situated individual afflicted with plaintiff's heart ailments." Defendant's Memo at 14. Although "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom" to determine the ultimate issue of discrimination, *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000), plaintiff's suggested inference would not be "proper." Therefore, the extent of plaintiff's medical condition is not relevant to any issue other than the threshold determination that plaintiff is disabled under the NYHRL. Because the parties stipulated to that threshold issue, further evidence regarding the plaintiff's medical condition has no probative value.

Evidence of the extent of a plaintiff's disability can be highly prejudicial and "carr[ies] the potential of an inappropriate appeal to the jury's sympathy." *See Thompson v. State Farm Fire and Cas. Co.*, 34 F.3d 932, 940 (2d Cir.1994) (affirming exclusion of evidence of plaintiff's medical condition under Rule 403 where its only relevancy was to explain why plaintiff was forgetful during cross-examination). Given that evidence regarding plaintiff's medical condition is irrelevant to any piece of plaintiff's case other than the element to which the parties have stipulated, the probative value of evidence of plaintiff's medical condition beyond that to which the parties stipulated is substantially outweighed by the danger of unfair prejudice. Therefore, the Court will exclude under Rule 403 any evidence of plaintiff's medical condition beyond that to which the parties have stipulated.

## II. Moross' Alleged Comment

■ Defendant requests that the Court exclude evidence of "alleged discriminatory remarks made by individuals who [we]re not involved in the decision to terminate plaintiff's employment." Motion at 1. More specifically, defendant requests that the Court exclude an alleged statement made by the defendant's prior CEO, Mr. Moross, in 1992, in which he allegedly "told the plaintiff that both he—Moross—and the board were afraid that plaintiff would die as a result of his heart problems and thereby adversely affect the functioning of defendant's financial department" and that "Moross and the board decided to hire a new officer into defendant's financial department to assist plaintiff and alleviate some stress on him." PTO at Plaintiff's Contentions # 8–11.

Defendant argues that Moross' comment should be excluded because it is a remote comment made by a person who did not take part in the decision to fire plaintiff and therefore "cannot constitute evidence of discrimination." Defendant's Memo at 10–11. However, defendant misunderstands plaintiff's purpose in submitting the remark. In fact, Moross' comment is highly relevant to an important element of plaintiff's case and therefore is admissible.

Plaintiff's ADEA claim is also analyzed under the burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Sharkey v. Lasmo*, 214 F.3d 371, 374 (2d Cir.2000). "A plaintiff who claims age discrimination has the burden—described as minimal—of establishing four elements to prove a prima facie case. Plaintiff must show that he is (1) a member of the protected age group, (2) qualified for the position, (3) subjected to an adverse employment decision or discharge, and that (4) his discharge occurred under circumstances giving rise to an inference of discrimination." *Tarshis v. Riese Org.*, 211 F.3d 30, 35–36 (2d Cir.2000) (internal citations omitted). "If the plaintiff establishes a prima facie case, a rebuttable presumption of discrimination arises," and "[t]he burden of production then shifts to

the employer to articulate a legitimate, non-discriminatory reason for discharging the employee." *Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 134 (2d Cir. 2000).

"If the employer articulates a non-discriminatory reason for its employment decision, the presumption of discrimination raised by the prima facie case simply drops out of the picture." *Id.* at 135. At this point, the plaintiff "must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves,* 120 S.Ct. at 2106.

Defendant intends to prove that it had a legitimate, non-discriminatory reason for plaintiff's discharge by showing that it fired plaintiff from his position of Senior Vice President of Finance and that "this work would be performed by the home office." *See* PTO at Defendant's Contention # 20. However, plaintiff intends to prove that this explanation is pretextual by showing that he was actually fired from the position of Financial Reporting Manager, a position that was filled one month after plaintiff's firing by a thirty-three year old. *See* PTO at Undisputed Fact # 15, Plaintiff's Contention # 18–19, 33.

Plaintiff alleges that in 1992, after plaintiff suffered a "cardiac incident" that forced him to miss a board meeting, the defendant's former CEO, Moross, informed plaintiff that the defendant was going to "hire someone else into the financial department" because it feared that plaintiff "would die as a result of his heart problems and thereby leave defendant's financial department in the lurch." Plaintiff's Memo at 6. Defendant did, in fact, then hire Sabanos as Chief Financial Officer. *See* PTO at Plaintiff's Contention # 12, Defendant's Contention # 8. Plaintiff alleges that Sabanos then assumed substantially all of plaintiff's duties as Senior Vice President. *See* Plaintiff's Memo at 7. When the defendant began to reduce its personnel, plaintiff became concerned

about his job security and allegedly informed Sabanos that he would take over a particular subordinate's job after her resignation. *See* PTO at Plaintiff's Contention # 18. Plaintiff alleges that he did take over the prior subordinate's job as Financial Reporting Manager and that this was the position he held when he was fired. *See* PTO at Plaintiff's Contention # 19. Defendant filled the position of Financial Reporting Manager within one month of plaintiff's discharge with a thirty-three year old employee. *See* PTO at Undisputed Fact # 15.

Establishing the position from which plaintiff was discharged is critical to plaintiff's case. As the Court explained in *Epstein I,* "[i]f plaintiff was considered to have held the higher position, then defendant's explanation ... may prove a persuasive explanation for the discharge of plaintiff. If, in contrast, plaintiff was considered to have been a lower-level financial reporting manager, then defendant's explanation would not, in fact, explain plaintiff's discharge." *Epstein I,* 21 F.Supp.2d at 404, n. 1. Moross' comment is "offered to address the quite pertinent issue of which position plaintiff held at the time of discharge." *Epstein I,* 21 F.Supp.2d at 405. As Moross' comment is highly relevant to the issue of pretext, the Court will allow its admission so as to "afford [plaintiff] the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves,* 120 S.Ct. at 2106.

Although the probative value of Moross' comment outweighs any prejudice under Rule 403, the Court will consider a limiting instruction to the jury with respect to the admissibility of this evidence, if submitted by defendant for consideration by the plaintiff and the Court in a timely fashion.

### III. Ages or Disability Status of Current or Former Defendant Employees

■ Defendant requests that the Court exclude "evidence regarding the ages or

disability status of current or former defendant employees." Motion at 1. Specifically, defendant requests that the Court exclude evidence of the ages and disability status of the employees defendant terminated in its reduction in force (RIF) in January of 1996, shortly before plaintiff was terminated. *See* Defendant's Memo at 12. Plaintiff alleges that the 1996 RIF was "premised, in large part, upon defendant's consideration of various protected characteristics of the subject employees, and that [it] resulted in the selection of a disproportionately large number of older employees for discharge." Plaintiff's Memo at 9. Plaintiff argues that this evidence is admissible under Rule 404(b) of the Federal Rules of Evidence to prove defendant's intent, motive, and knowledge.

Under Rule 404(b), a party may not introduce evidence of prior bad acts to "prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404(b). However, a party may introduce such evidence to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). In determining whether to admit evidence under Rule 404(b), the Second Circuit "follow[s] an inclusionary rule, allowing the admission of such evidence for any purpose other than to show a defendant's ... propensity, as long as the evidence is relevant and satisfies the probative-prejudice balancing test of Rule 403 of the Federal Rules of Evidence." *U.S. v. Inserra*, 34 F.3d 83, 89 (2d Cir.1994). Plaintiff has asserted three proper bases for introducing this evidence under Rule 404(b).

First, the RIF evidence is admissible as circumstantial evidence of defendant's discriminatory intent. To establish a prima facie case under both NYHRL or under the ADEA, plaintiff must show that "the discharge occurred under circumstances giving rise to an inference of ... discrimination." *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 83 (2d Cir.1990) (ADEA). *See also Delta Air Lines*, 652

N.Y.S.2d at 258; *Song*, 957 F.2d at 1046 (same). To establish this element of his prima facie case, "a plaintiff may rely on direct evidence of what the defendant did and said, but more often than not must depend on the cumulative weight of circumstantial evidence to make out a prima facie case." *Tarshis*, 211 F.3d at 35–36 (internal citations omitted) (ADEA); *Song*, 957 F.2d at 1047. "Because an employer who discriminates is unlikely to leave a 'smoking gun' attesting to a discriminatory intent, a victim of discrimination is seldom able to prove his claim by direct evidence, and is usually constrained to rely on circumstantial evidence." *Chambers*, 43 F.3d at 37. *See also Song*, 957 F.2d at 1047 (same). Evidence that defendant discharged protected employees prior to plaintiff's discharge is admissible to prove discriminatory intent as part of plaintiff's prima facie case. *See Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 163 (2d Cir. 1998) (In ADEA case, evidence of defendant's discharge of employees in protected class 4 years prior to plaintiff's alleged constructive discharge and comments by management 2 years prior were sufficient to establish plaintiff's prima facie case and give rise to inference of discrimination). Here, evidence of defendant's alleged prior discriminatory discharges is relevant to establish defendant's discriminatory intent and is admissible under Rule 404(b).

Second, the RIF evidence is admissible to prove defendant's motive for discharging plaintiff. Once an employment discrimination defendant offers a legitimate, non-discriminatory reason for the plaintiff's discharge, the plaintiff has the burden to prove that the defendant's "purported non-discriminatory reason was not true and in fact was a pretext for discrimination." *Hollander*, 895 F.2d at 83 (holding in ADEA case that district court abused its discretion when it denied plaintiff's discovery request for a list of every management level employee over the age of 40 who was terminated within the nineteen months prior to plaintiff's discharge,

because such evidence was relevant to prove defendant's motive). Evidence that an employment discrimination defendant discharged protected employees prior to discharging plaintiff "may reveal patterns of discrimination against a group of employees, increasing the likelihood that an employer's offered explanation for an employment decision regarding a particular individual masks a discriminatory motive." *Id.*, 895 F.2d at 84. Here, the RIF evidence is relevant to the issue of pretext and is admissible under Rule 404(b) to prove defendant's motive.

Third, the RIF evidence is admissible to prove defendant's knowledge of plaintiff's disabilities. Evidence of the circumstances surrounding the adverse employment actions taken with regard to other employees are admissible to prove defendant's knowledge of plaintiff's disability. *See Finley v. Cowles Business Media,* 1994 WL 665019,*2 (S.D.N.Y.1994) (holding that evidence of the way human resources handled demotion of another employee was relevant to "rebut defendant's denial that top management was aware of plaintiff's heart condition"). Here, the primary decision-maker responsible for plaintiff's termination, defendant's CEO at the time of plaintiff's discharge, testified that he was not aware of plaintiff's disabilities at the time of plaintiff's discharge. *See* Deposition of Mell Vaughan, Oct. 10, 1997. Plaintiff alleges that it is defendant's practice to consider an employee's age and disability status when it determines whether to terminate that employee, and plaintiff plans to prove this practice with evidence that defendant compiled such data as part of the RIF. *See* Plaintiff's Memo at 13–15. The RIF evidence is relevant to prove defendant's knowledge of plaintiff's disability and is therefore admissible under Rule 404(b).

The defendant argues that even if this evidence is relevant, it should be excluded because admitting the evidence would result in a "trial within a trial" to determine whether the RIF terminations were dis-

criminatory. *See* Defendant's Reply Memorandum of Law in Support of Motion, at 6. Although this may be true, such a determination will not result in a significant increase in the time required at trial because the persons who were involved in the RIF decision-making process are the same persons who were involved in the decision to terminate plaintiff. Therefore, no new witnesses will be added to provide the RIF evidence.

Lastly, the probative value of the RIF evidence to establish defendant's intent, motive, and knowledge outweighs any prejudice under Rule 403. Again, the Court invites defendant to prepare a proposed limiting instruction to the jury with respect to the admissibility of this evidence for consideration by plaintiff and the Court.

## IV. Bifurcation

■■ Defendant moves that the Court bifurcate the trial into liability and damage phases. *See* Motion at 1. Rule 42(b) of the Federal Rules of Civil Procedure gives the Court the power to order separate trials, "in furtherance of convenience or to avoid prejudice, or when separate trials will be conductive to expedition and economy," provided that the Seventh Amendment's grant of the right of trial by jury is held inviolate. Fed.R.Civ.P. 42(b). Within the confines of Rule 42(b), however, the Court has "broad discretion" over the question of whether to order that issues in a single case be tried separately. *See Smith v. Lightning Bolt Productions, Inc.,* 861 F.2d 363, 370 (2d Cir.1988); *In re Master Key Antitrust Litigation,* 528 F.2d 5, 14 (2d Cir.1975). The principal purpose of the rule is to "enable the trial judge to dispose of a case in a way that both advances judicial efficiency and is fair to the parties," while furthering convenience, avoiding delay and prejudice, and serving the ends of justice. *See In re Bendectin Litigation,* 857 F.2d 290, 307 (6th Cir.1988).

■ Defendant first argues that the Court should bifurcate the trial to avoid

jury confusion. Defendant argues that differences in federal and state employment discrimination statutes, which allow for different remedies, will confuse the jury if the jury is confronted with testimony relating to the issue of damages during the liability phase of the trial. *See* Defendant's Memo at 6. However, the jury will not be informed of the relevant legal standards until the Court provides the jury charge. Furthermore, because the Court will exclude any evidence regarding plaintiff's medical condition other than that to which the parties stipulated, the jury will not be confronted with any scientifically complex testimony. Where large amounts of the court's and parties' time may be potentially expended on establishing a legal issue that could later turn out to be unnecessary, and when bifurcation is likely to result in "considerable simplification of the issues," separate trials become favorable. *See Akzona Inc. v. E.I. Du Pont De Nemours & Co.*, 607 F.Supp. 227, 235 (D.Del.1984) (Bifurcation appropriate in "enormously complex" foreign patent dispute involving antitrust and unfair competition claims and scientifically complicated concepts). The defendant has not convinced the Court that this trial has the potential to be enormously complex, particularly given the absence of any medical, scientific, or psychological testimony.

Second, defendant argues that the introduction of medical evidence will prejudice the jury. *See* Defendant's Memo at 7. As the Court will exclude any evidence regarding the plaintiff's medical condition other than that to which the parties stipulated, this argument is of no moment.

■ Third, defendant argues that testimony regarding plaintiff's emotional distress will prejudice the jury in its determination of liability. Testimony regarding extreme emotional distress may prejudice the jury in its determination of liability. *See Zofcin v. Dean,* 144 F.R.D. 203, 205 (S.D.N.Y.1992) (emotional distress testimony prejudicial where plaintiff's testimony included "detailed evidence of extreme pain and suffering, including burning flesh and screams of pain"). However, there is no potential for such extreme testimony in this case. Plaintiff will offer no expert testimony on the issue of emotional distress, and plaintiff himself is the only witness scheduled to testify regarding plaintiff's emotional distress. *See* Plaintiff's Memo at 23. Therefore, not only will plaintiff's testimony regarding emotional distress not prejudice the jury, but bifurcation could have an adverse effect on judicial economy, as it would unnecessarily require plaintiff to testify on two separate occasions.

## CONCLUSION

For the reasons stated above, defendant's request that the Court bar the introduction of evidence regarding plaintiff's medical condition other than that to which the parties stipulated is GRANTED; defendant's request that the Court bar the introduction of Moross' comment discussed above is DENIED; defendant's request that the Court bar the introduction of evidence regarding the defendant's 1996 RIF is DENIED; and defendant's request that the trial be bifurcated is DENIED.

**SO ORDERED.**