PPX ENTERPRISES, INC., Mod Music, Inc., and J.H. Records, Inc., Plaintiffs-Appellants,

v.

AUDIOFIDELITY, INC. and Dante J. Pugliese, Defendants-Appellees.

No. 1516, Docket 84–7132.

United States Court of Appeals, Second Circuit.

Submitted July 20, 1984.

Decided Oct. 4, 1984.

Silfen & Glasser, P.C., New York City, for defendants-appellees.

Before NEWMAN and PRATT, Circuit Judges, and ROBERT J. KELLEHER, District Judge for the Central District of California, sitting by designation.

GEORGE C. PRATT, Circuit Judge:

Plaintiffs PPX Enterprises, Inc., Mod Music, Inc., and J.H. Records, Inc., appeal from a judgment of the United States District Court for the Southern District of New York, Henry F. Werker, *Judge*, granting defendants' motion to dismiss and denying plaintiffs' motion for summary judgment in a case brought under the Lanham Act, 15 U.S.C. § 1125(a), and under the common law for unfair competition, tortious interference with a contract, and nonpayment of royalties. The complaint alleges that defendants Audiofidelity Enterprises, Inc., and Dante J. Pugliese market phonograph record albums whose covers and promotional material falsely describe the recordings as featuring musical performances of the late rock star Jimi Hendrix. The district court, finding that plaintiffs had not shown that they had any interest whatsoever in Jimi Hendrix recordings, dismissed the Lanham Act claim for lack of standing, and the state law claims then fell for lack of federal jurisdiction. We conclude that the district court erred because it had no adequate reason for concluding on a motion for summary judgment that the plaintiffs lacked an interest in Hendrix recordings sufficient for standing. We therefore reverse and remand for further proceedings.

I. BACKGROUND

Plaintiffs PPX Enterprises, Inc., Mod Music, Inc., and J.H. Records, Inc., are New York corporations in the business of producing, acquiring, and licensing rights to master recordings of musical performances. Defendants Audiofidelity Enterprises, Inc., and its president, chairman, and sole stockholder, Dante J. Pugliese, are in the closely related business of manufacturing, distributing, licensing, and other-

Kenneth J. Stempler, New York City (Patrick J. Monaghan, Jr., New York City, of counsel), for plaintiffs-appellants.

wise marketing phonograph records. Plaintiffs claim to have financial interests in sales of recordings featuring Jimi Hendrix as the lead performer, and they brought this suit alleging that the defendants were marketing albums which purported to feature Hendrix, but which did not contain Hendrix performances at all or which contained performances in which Hendrix was a background performer rather than a featured one. The complaint is that the defendants' misrepresentations create confusion among consumers and raise doubts about the quality and truthfulness of plaintiffs' own recordings. Plaintiffs seek an injunction and damages for disparagement of their reputation, prestige, and goodwill, for the dilution of value of their recordings, and for the loss of royalty income.

Plaintiffs trace their interest in Hendrix recordings to an agreement between PPX and Jimi Hendrix dated October 15, 1965. Under this agreement Hendrix was to produce, play, and sing exclusively for PPX for a period of three years. During the time covered by the agreement Hendrix made for PPX enough recordings for eight phonograph albums, including two entitled "Flashing" and "Get That Feeling".

The extent of PPX's rights to these recordings was subsequently changed by two events, the consequences of which are matters of partial but not complete agreement among the parties. The first event was a settlement agreement dated June 24, 1968, resolving litigation among PPX, Jimi Hendrix, Capitol Records, Inc., Warner Brothers, Yameta Company, Ltd., and others over "exclusive" rights to Hendrix recordings. On its face, and as the defendants admit in their brief filed with this Court, the settlement gave PPX a number of royalty interests in sales of Hendrix albums, and preserved the rights of PPX and Capitol Records to issue the "Flashing" and "Get That Feeling" albums in the United States and Canada.

The second event that limited PPX's rights was an agreement transferring most, but not all, of PPX's rights in "Flash-ing" and "Get That Feeling" to the other two plaintiffs in the present case, Mod Music and J.H. Records. Here, too, defendants admit that PPX retained an interest in the recordings. In the Third Amended Consent Pretrial Order filed in the present case the parties set out, among other things, these "Agreed Findings of Fact":

8. By an agreement made December 23, 1976 and an amendment to said agreement dated December 24, 1976, PPX sold, assigned and granted to Plaintiffs J.H. RECORDS and MOD MUSIC, exclusively and in perpetuity for U.S. distribution, all of PPX's right, title and interest in and to two (2) Hendrix albums of master recordings entitled "Flashing" and "Get That Feeling".

\* \* \*

12. Subsequent to December 23, 1976, PPX had no rights in and to the two master recordings referred to in par. 8 above in the territory of the United States *other than the right to receive royalty income therefrom* pursuant to the agreement and amendment referred to in par. 8. [Emphasis added.]

Mod Music and J.H. Records then sold at least some of their interests in "Flashing" and "Get That Feeling" to others who are not parties in the present case. Plaintiffs insist, however, that the sales were subject to PPX's continuing royalty interest, and that Mod Music and J.H. Records themselves retained both royalty interests and reversionary interests. Plaintiffs also claim that under the reversionary provisions some ownership rights have in fact reverted to J.H. Records.

Defendants see these sales by Mod Music and J.H. Records differently. In a motion filed on January 14, 1983 they asked that Mod Music and J.H. Records be dismissed for lack of standing, arguing that Mod Music and J.H. Records had actually conveyed away all their interests in Hendrix recordings. The plaintiffs, in turn, moved for summary judgment. After preliminary consideration of these motions the district court asked the defendants to move against PPX as well as against Mod Music

and J.H. Records, and asked each party to supply documents tracing its chain of title to Hendrix recordings.

Ultimately, the district judge found that PPX's chain of title was flawed from the very beginning. In granting judgment to defendants the court explained that PPX had not shown that it ever held any interest in Jimi Hendrix recordings, even after signing the October 1965 agreement with Hendrix:

> PPX has failed to present documentary evidence of its chain of title. Apparently, Hendrix entered into a contract with Sue Records, Inc. several months before he entered into a similar contract with PPX. * * * As a result, Sue Records, Inc., and its successors in interest, hold the protected interests in the Hendrix albums. * * * PPX has not established that it holds any interest afforded protection under the Lanham Act.

Because PPX's original contract was invalid, the court concluded, PPX could neither transfer interests to Mod Music and J.H. Records nor retain any rights to royalties.

## II. Discussion

### A. *Plaintiffs' Royalty Interests.*

We treat the district court's decision as one granting summary judgment under Fed.R.Civ.P. 56. Such a motion should not be granted unless there is "no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he court's function upon a motion for summary judgment is not to resolve issues of fact but to determine whether any material factual issues are raised after resolving all questionable inferences in favor of the party against whom the judgment is sought." *United States v. Matheson,* 532 F.2d 809, 813 (2d Cir.), *cert. denied,* 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 85 (1976). Uncertainty about any material fact defeats the motion. *United States v. One Tintoretto Painting,* 691 F.2d 603, 606 (2d Cir.1982). Ambiguities must be viewed in the light most favorable to the party opposing the summary judgment. *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983).

In the present case the district court found it decisive that Sue Records had contracted with Hendrix in July, 1965, several months before the October agreement between Hendrix and PPX. Relying on the principle that the first of two agreements will be protected, the court held that PPX had not established any interest at all in Hendrix recordings.

Given the facts before the court, it was improper to draw that conclusion on a motion for summary judgment. There is considerable uncertainty concerning the effect of the Sue Records contract. The conclusion that PPX's 1965 contract is invalid is neither the only inference, nor the most favorable one for PPX, that can be drawn. It cannot be the most favorable inference because it runs directly counter to the parties' own stipulations. As set out above, there was an "Agreed Finding of Fact" that PPX retained royalty interests in, at the least, "Flashing" and "Get That Feeling".

■ "Under federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court." *Brown v. Tennessee Gas Pipeline Co.,* 623 F.2d 450, 454 (6th Cir.1980). "Having agreed on a set of facts, the parties [who adopted the stipulation], and this Court, must be bound by them; we are not free to pick and choose at will." *Stanley Works v. FTC,* 469 F.2d 498, 506 (2d Cir.), *cert. denied,* 412 U.S. 928, 93 S.Ct. 2750, 37 L.Ed.2d 155 (1973). Of course, the parties may not create a case by stipulating to facts which do not really exist. A district court is entitled to disregard a stipulation if to accept it would be "manifestly unjust or if the evidence contrary to the stipulation [is] substantial." *Loftin and Woodard, Inc. v. United States,* 577 F.2d 1206, 1232 (5th Cir.1978).

■ Here the information available to the district court about the invalidity of PPX's 1965 contract with Hendrix, and of

PPX's later royalty interests, is not substantial enough to overcome the parties' stipulation. In its memorandum decision the court supports its findings on the Sue Records contract by referring to *"Yameta v. Capitol Records, Inc.,* 279 F.Supp. 582 (S.D.N.Y.), *rev'd on other grounds,* 393 F.2d 91 (2d Cir.1968)"*, in which PPX was a defendant along with Capitol Records. In its opinion denying a preliminary injunction, the *Yameta* court reports as "undisputed" the fact that Hendrix did sign an exclusive recording artist contract with Sue Records in July of 1965, some three months before the agreement between Hendrix and PPX; but it also reports that there was substantial dispute whether or not Sue Records' rights had been superceded by PPX's later contract with Hendrix, and that "[t]his court has no clear notion of which party has the exclusive right to Hendrix's services * * *". 279 F.Supp. at 584–85. Moreover, this court of appeals reversed "[u]pon the law *and the facts*", making it problematic just what conclusions can be drawn from the district court opinion. 393 F.2d at 92 (emphasis added). And despite the district judge's view in the instant case that *Yameta* was reversed "on other grounds", it is not clear from the two paragraph, *per curiam* court of appeals opinion exactly what parts of the district court *Yameta* decision can still be relied upon.

Finally, as the district judge in the instant case acknowledged in his decision, the parties in the *Yameta* case "ultimately settled the case without resolving the contract issue."

We conclude that *Yameta's* reference to the Sue Records contract cannot establish the priority of that contract over PPX's October 1965 contract, and that the stipulation that PPX retains royalty interests should remain controlling. It follows, of course, that the district court's conclusion that Mod Music and J.H. Records had no interests must also fall, for that conclusion was itself based on the supposed invalidity of PPX's chain of title.

## B. *Standing Under the Lanham Act.*

Defendants contend that even if the plaintiffs have some interest in sales of Jimi Hendrix records, the district court's decision is still correct because those interests are insufficient for standing under the Lanham Act. Defendants are mistaken. The parties' stipulation that royalty interests were retained was enough to give standing to PPX, and standing for Mod Music and J.H. Records follows from their claims through PPX to royalty, reversionary, and ownership interests.

Section 43(a) of the Lanham Act provides in pertinent part:

Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, * * * shall be liable to a civil action by any person * * * who believes that he is or is likely to be damaged by the use of any such false description or representation.

15 U.S.C. § 1125(a).

This section, which became effective along with the rest of the act in 1946, created a new statutory tort of false representation of goods in commerce. *L'Aiglon Apparel, Inc. v. Lana Lobell, Inc.,* 214 F.2d 649, 651 (3d Cir.1954). The language of the section is strikingly general: it covers words or symbols "tending" to give false impressions, and standing to sue is given to "any person" who "believes" he or she is damaged or is "likely to be damaged". These provisions have been narrowed somewhat by court decisions, but because the statute is remedial and because its words are so clearly expansive it should, generally speaking, be broadly construed. *Geisel v. Poynter Products Inc.,* 283 F.Supp. 261, 267 (S.D.N.Y.1968). Courts have restricted standing to commercial parties, excluding mere consumers, *Colligan v. Activities Club of New York,*

*Ltd.*, 442 F.2d 686, 692 (2d Cir.), *cert. denied*, 404 U.S. 1004, 92 S.Ct. 559, 30 L.Ed.2d 557 (1971), and plaintiffs must also allege more than "mere subjective belief" about damage, *Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 189 (2d Cir.1980). But injunctive relief can be awarded without specific evidence of some definite loss of sales, *id.* at 190, and a plaintiff has standing whether he or she is in direct or indirect competition with the alleged violator. *Id.* at 190; *Rare Earth, Inc. v. Hoorelbeke*, 401 F.Supp. 26, 39 (S.D. N.Y.1975). What matters is whether a commercial party has a "reasonable interest to be protected" against the alleged false advertising. *Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 190 (2d Cir.1980) (quoting 1A R. Callmann, *Unfair Competition, Trademarks and Monopolies* § 5.04 at p. 35 (4th ed. 1981)); *Smith v. Montoro*, 648 F.2d 602, 608 (9th Cir.1981) (quoting Callmann); *Quabaug Rubber Co. v. Fabiano Shoe Co., Inc.*, 567 F.2d 154, 160 (1st Cir.1977) (quoting Callmann).

■ In the present case plaintiffs claim to have straightforward commercial interests that could reasonably be affected by misleadingly packaged Jimi Hendrix recordings. Plaintiffs are in the business of making money by acquiring royalty interests in the sale of record albums and singles. Their interests in promoting sales are direct, and hardly less immediate than the interests of those who actually distribute the records. Every time a record in which they have a royalty interest is sold, they earn money; every time a sale is lost to a competitor, they lose a potential profit. Moreover, if consumers buy defendants' Jimi Hendrix albums and find that they have, in fact, been misled, then it is not unlikely that they will be reluctant to buy other Hendrix recordings, including those in which plaintiffs have their interests. Because of their royalty interests, plaintiffs have a pecuniary stake in sales of Hendrix recordings that makes them genuine business competitors of the defendants.

We stress that there is nothing novel about awarding standing under the Lanham Act to one who has a direct pecuniary interest at stake. In *Mutation Mink Breeders Association v. Lou Nierenberg Corp.*, 23 F.R.D. 155 (S.D.N.Y.1959), a trade association brought suit against a company which was allegedly selling synthetic garments with labels giving the false impression that the garments were made of real mink. The defendant company challenged the association's standing to sue, arguing that there was no competition between it and the trade association. The court held that the association had standing because it had "a direct pecuniary interest which might be affected by defendants' acts."

> [P]laintiff Association has a pecuniary interest in preventing the diversion of trade from its members to the defendants since in return for its services to its members it receives a percentage of the sales price of the pelts sold by them.

*Id.* at 161–62.

The facts in the present case form a similar pattern. The Mink Breeders Association received a percentage of the sales of mink furs; PPX, Mod Music, and J.H. Records claim a percentage of the sales of Hendrix record albums. Thus, we break little legal ground by finding that the plaintiffs in the present case have shown sufficient interest to give them standing under the Lanham Act.

Defendants argue otherwise, but their reasoning is unconvincing. They list cases where a performer or record distributor was given standing in a Lanham Act suit, *Benson v. Paul Winley Record Sales Corp.*, 452 F.Supp. 516 (S.D.N.Y.1978), *CBS Inc. v. Springboard International Records*, 429 F.Supp. 563 (S.D.N.Y.1976), *Rich v. RCA Corp.*, 390 F.Supp. 530 (S.D. N.Y.1975), *CBS, Inc. v. Gusto Records, Inc.*, 403 F.Supp. 447 (M.D.Tenn.1974), and then draw the conclusion that parties having only royalty interests are not entitled to Lanham Act protection. But that conclusion appears nowhere in the cases they cite, none of which even raises the particular point now at issue. If anything, these cases support plaintiffs' position, for in

each case standing was given to a party who did not actually sell record albums in direct competition with the party sued.

### C. *Other Issues.*

Plaintiffs' motion for summary judgment rested on the *res judicata* or collateral estoppel effect of a default judgment in *PPX Enterprises, Inc., et al. v. John Brantley and Vidalia Productions, Inc.,* 83 Civ. 7898 (GLG). On this issue the district court in the instant case never reached the merits of plaintiffs' arguments, nor do we. The issue can be dealt with by the district court on remand when, and if, it is raised.

### III. CONCLUSION

We reverse the judgment of the district court and remand the case for further proceedings.

Judgment affirmed; cross appeal dismissed.