Allen EPSTEIN, Plaintiff,

v.

KALVIN–MILLER INTERNATIONAL, INC., Defendant.

No. 96 CIV. 8158(PKL).

United States District Court,
S.D. New York.

June 21, 2000.

Jeffrey M. Bernbach, Jason Bernbach, New York City, for Plaintiff.

Clifton, Budd & DeMaria, LLP, New York City, Roy W. Gerke, of counsel, for Defendant.

## OPINION AND ORDER

LEISURE, District Judge.

Plaintiff Allen Epstein brings this action against his former employer, Kalvin–Miller International, Inc. ("Kalvin–Miller"), alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 623(a)(1)-(2), and the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law §§ 290, *et seq.*

On October 15, 1998, the Court denied defendant's motion for summary judgment on all three statutory causes of action, holding that material issues of fact existed as to defendant's state of mind in discharging plaintiff. *See Epstein v. Kalvin–Miller Int'l, Inc.*, 21 F.Supp.2d 400 (S.D.N.Y. 1998) [hereinafter, *"Epstein I"*]. Now before the Court is defendant's renewed motion for summary judgment on plaintiff's ADA and NYHRL claims.

For the reasons stated below, defendant's renewed motion for summary judgment is granted in part and denied in part.

## BACKGROUND

The Court has previously discussed the facts of this case in some detail. *See Epstein I,* 21 F.Supp.2d at 401–02. Accordingly, only those facts relevant to the instant motion are recited herein.

On January 15, 1999, following the Court's denial of defendant's first motion for summary judgment, the parties submitted their pre-trial order and this action was marked ready for trial. Subsequently, on June 29, 1999, defendant sought leave of the Court to renew its motion for summary judgment in light of three decisions rendered by the Supreme Court while this case was awaiting trial. Over plaintiff's objection, the Court granted defendant leave to renew its motion for summary judgment on plaintiff's ADA and NYHRL claims. The motion was fully submitted to the Court on October 19, 1999.

## DISCUSSION

### I. Plaintiff's ADA Claim

In *Epstein I,* the Court denied defendant's motion for summary judgment on plaintiff's ADA claim, finding that plaintiff had established a prima facie case of discrimination, thus shifting the burden of production to defendant under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Epstein I,* 21 F.Supp.2d at 403–04. Because there existed issues of material fact as to defendant's reasons for terminating plaintiff, the Court denied defendant's motion for summary judgment. *See id.* at 405.

Defendant argues that, following the decisions rendered by the Supreme Court in June 1999, plaintiff can no longer establish a prima facie case under the ADA. *See Albertsons, Inc. v. Kirkingburg,* 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518

(1999); *Murphy v. United Parcel Serv.,* 527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484; *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Having undertaken a careful review of these recent decisions, the Court agrees.

In *Epstein I,* the Court enumerated the elements of a prima facie case under the ADA:

> Plaintiff must establish that (i) he is a member of a protected class (*i.e.,* under the ADA, that plaintiff is disabled …); (ii) he is qualified to perform the essential functions of the employment position at issue; and (iii) the circumstances of his discharge from the position give rise to an inference of discrimination.

*Epstein I,* 21 F.Supp.2d at 402 (citing *Reeves v. Johnson Controls World Serv., Inc.,* 140 F.3d 144, 149–50 (2d Cir.1998); *Sutera v. Schering Corp.,* 73 F.3d 13, 16 (2d Cir.1995)).

Defendant argues that, under *Albertsons, Murphy,* and *Sutton,* plaintiff is no longer able to establish the first element of his ADA claim. In *Epstein I,* the Court found that both plaintiff's heart disease and his type 2 diabetes qualified as disabilities under the ADA, in satisfaction of this first element. Following the ADA definition of "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," 42 U.S.C. § 12102(2), the Court concluded that both ailments were disabilities. With respect to plaintiff's heart disease, the Court observed that plaintiff "is required to take a regimen of medications to treat his heart disease," and that "[f]ailure to take the medication would, according to plaintiff's treating physician, have grave, and potentially fatal, consequences for plaintiff." *Epstein I,* 21 F.Supp.2d at 403 (citing Affidavit of Arthur Weisenseel, M.D., at ¶ 11). The Court further noted that, "even as medically treated, plaintiff's heart disease limits plaintiff's ability to engage in the major life activity of walking and to undertake other forms of strenuous activity." *Id.* (citing Weisenseel Aff. at ¶ 7). With respect to plaintiff's diabetes, the Court found that "[f]ailure by plaintiff to take the necessary medication would have a significant adverse effect on plaintiff's health and could prove fatal." *Id.* at 404 (citing Weisenseel Aff. at ¶ 11).

The Court held that, in determining whether either of plaintiff's conditions constitutes a disability under the ADA, the Court "must consider the effect the condition would have on plaintiff *absent* medication." *Id.* (emphasis added). Although this holding was amply supported by EEOC regulations and other cases from this District, the Supreme Court has since clarified that "if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures—both positive and negative—must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the Act." *Sutton,* 527 U.S. at ——, 119 S.Ct. 2139, 2146, 144 L.Ed.2d 450; *see also Albertsons,* 527 U.S. at ——, 119 S.Ct. 2162, 2169; *Murphy,* 527 U.S. at ——, 119 S.Ct. 2133, 2137, 144 L.Ed.2d 484.

The Court must now consider whether either of plaintiff's medical conditions, *in its treated state,* substantially limits one or more of plaintiff's major life activities. Viewing the facts in the light most favorable to plaintiff, the Court finds that neither plaintiff's diabetes nor his heart disease, as treated, substantially limits a major life activity.

As a threshold matter, plaintiff argues that the Supreme Court's most recent pronouncements on the ADA are irrelevant to his case, because defendant earlier "stipulated" that plaintiff was disabled within the meaning of the statute. Plaintiff refers to the text of the joint pre-trial order, which states, in relevant part: "The parties stipulate that at the time of plaintiff's termination he was 'disabled' under the ADA

and the New York State Executive Law due to his diabetes and heart conditions." Pre-trial Order at 3. Notwithstanding the superficial appeal of such an argument, it is clearly unsupported by the law of this Circuit.

■ The "stipulation" of the parties is merely a restatement of the Court's holding in *Epstein I*, which defendant had little choice but to acknowledge when drafting the joint pre-trial order. Given the superseding decisions of the Supreme Court, however, it is clear that plaintiff's medical conditions no longer constitute disabilities under the ADA. While the parties may stipulate to facts, and are generally bound by such stipulations, *see PPX Enterprises, Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 123 (2d Cir.1984), plaintiff is incorrect to suggest that defendant may be held to an incorrect, or superseded, view of the law. "A court ... is not bound to accept stipulations regarding questions of law." *Sinicropi v. Milone*, 915 F.2d 66, 68 (2d Cir. 1990) (citing *Estate of Sanford v. Commissioner of Internal Revenue*, 308 U.S. 39, 51, 60 S.Ct. 51, 84 L.Ed. 20 (1939)). Moreover, "[a] district court is entitled to disregard a stipulation if to accept it would be manifestly unjust or if the evidence contrary to the stipulation [is] substantial." *PPX Enterprises*, 746 F.2d at 123 (internal quotes omitted). For both of these reasons, the Court rejects plaintiff's argument and finds this purported "stipulation" of the parties as to plaintiff's disability to be without legal effect.

Because plaintiff cannot avail himself of the "stipulation" as to his disability, the Court proceeds to consider *de novo*, whether, construing the facts in the light most favorable to plaintiff, either of his medical conditions constitutes a disability under the Supreme Court's recent trilogy of ADA cases.

The courts apply a three-part test to determine whether a plaintiff has an actual disability under the ADA. *See Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 641 (2d Cir.1998) (citing *Bragdon v. Ab-*

*bott*, 524 U.S. 624, 632, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998)). First, the Court must consider whether plaintiff's conditions are "physical impairments" as defined by EEOC regulations implementing the ADA. *See Colwell*, 158 F.3d at 641–42. These regulations "define an 'impairment' to include any 'physiological disorder, or condition' that affects, *inter alia*, the neurological, musculoskeletal, and cardiovascular systems." *Id.* at 642 (quoting 29 C.F.R. § 1630.2(h)(1)). There is no dispute that plaintiff's clinically diagnosed diabetes and heart disease qualify as impairments under this definition.

■ The Court must next consider whether the life activities allegedly affected by the impairment "are 'major' life activities under the ADA." *Id.* (citing *Bragdon*, 524 U.S. at 632, 118 S.Ct. 2196). Plaintiff contends that his conditions impair his ability to walk, which he properly classifies as a major life activity. As the Second Circuit noted in *Reeves*, "such major life activities as seeing, hearing, or walking ... are treated by the EEOC regulations and by our precedents as major life activities per se." *Reeves*, 140 F.3d at 151–52. Accordingly, the Court concludes that walking is unquestionably a major life activity. Plaintiff also suggests, quoting the language of his doctor, that he is also limited in his ability "to undertake any other form of strenuous activity." Pl. Br. at 12 (citing Weisenseel Aff. at ¶ 7). The Court finds that "strenuous activity" is not a major life activity cognizable under the ADA. The term is ill-defined, insofar as it suggests a quantitative measure of exertion rather than an *activity*, as specified by the ADA. It is equally clear that many of the activities that might fairly be described as "strenuous" have been specifically rejected by the courts as potential "major life activities." As the Second Circuit made clear in *Colwell*, activities such as "driving, doing mechanical work on cars, performing housework other than basic chores, going shopping in the mall with his wife, skiing, and golfing," as well as

**226**

"moving furniture, doing yard work, [and] painting and plastering," do *not* constitute major life activities. *Colwell*, 158 F.3d at 643. Thus, insofar as "strenuous activity" might describe these sorts of tasks, it clearly does not constitute a major life activity. The Court's inquiry is restricted, therefore, to consideration of walking, the only major life activity properly raised by plaintiff.

Finally, the Court must consider whether the plaintiff's impairment "substantially limits" the major life activity he has identified. *See Colwell*, 158 F.3d at 643. This inquiry is individualized and fact-specific. *See id.* (citing *Bragdon*, 524 U.S. at 641, 118 S.Ct. 2196; *Reeves*, 140 F.3d at 152; *Ryan*, 135 F.3d at 872). The EEOC regulations implementing the ADA define "substantially limited" as either:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or

> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

*Colwell*, 158 F.3d at 643 (quoting 29 C.F.R. § 1630.2(j)(1)).[1] Thus, to succeed on his ADA claim, plaintiff must prove that his diabetes or his heart disease impairs his ability to walk to such a great extent that he is "unable" to walk, or is "significantly restricted" in his ability to walk, as compared with the average person. Viewing the facts in the light most favorable to plaintiff, the Court finds that plaintiff's

medical condition, as documented by his physician and described in his own sworn testimony, does not limit his ability to walk to this extent.

■ The record indicates that plaintiff's type 2 diabetes, *as treated*, does not affect his ability to walk. Indeed, the only evidence regarding the impact of his diabetes is his physician's statement that if both his diabetes and his heart condition were left unmedicated, they "would have grave, and possibly fatal consequences upon ·him." Weisenseel Aff. at ¶ 11. Plaintiff has offered no evidence that his diabetes *in its treated state* would limit any of his major life activities. Indeed, at his deposition, plaintiff readily conceded that his diabetes had not imposed any limitations on him:

> Q. Now, has this condition affected your ability to work?
>
> A. No.
>
> Q. Has this condition otherwise affected you in any other physical activities?
>
> A. Not really.

Deposition of Allen Epstein at 158. After *Sutton*, there is no question that plaintiff's diabetes *does not* constitute a disability under the ADA.

■ Plaintiff's heart disease presents a different issue. Although plaintiff *does* plead facts to suggest that, even in its treated state, his heart disease might limit his ability to walk, the operative question under the ADA is not whether the condition merely *limits*, but whether it *substantially limits*, a major life activity. It is insufficient for plaintiff to plead mere limitation of a major life activity; rather, he must allege facts that, if true, would suggest a substantial limitation. The Second Circuit has noted:

---

1. The regulations also instruct that "[t]he following factors should be considered in determining whether an individual is substantially limited in a major life activity: (i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2). *Plaintiff offers no*

evidence to suggest that his medical condition will worsen, nor is there any indication that it will improve. Absent such evidence, the Court assumes, construing the facts in plaintiff's favor, that his condition will remain roughly the same. The Court thus focuses its inquiry primarily on the nature and severity of plaintiff's impairment, which it assumes will not change materially over time, for better or for worse.

Although almost any impairment may, of course, in some way affect a major life activity, the ADA clearly does not consider every impaired person to be disabled. Thus, in assessing whether a plaintiff has a disability, courts have been careful to distinguish impairments which merely affect major life activities from those that substantially limit those activities. *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir.1998) (citing *Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1454 (7th Cir.1995)). Indeed, in a factually analogous case, Judge Haight granted summary judgment to defendant upon finding plaintiff's evidence that she "cannot shovel snow or engage in other strenuous physical exercise[,] ... is limited in her ability to lift and carry objects weighing more than ten pounds[,] ... cannot kneel or bend, ... [and] after climbing stairs, raking leaves, doing housework or walking more than five city blocks[,] ... is out of breath and must stop and rest" was insufficient as a matter of law to establish the substantial limitation of a major life activity. *Hazeldine v. Beverage Media, Ltd.*, 954 F.Supp. 697, 703–04 (S.D.N.Y.1997).

Plaintiff's two sources of evidence regarding the impact of his heart disease are the affidavit of his physician and his own deposition testimony. In his affidavit, Dr. Weisenseel makes the conclusory statement that "[b]oth with and without medication, Mr. Epstein's heart disease limits his ability to walk and to undertake any other form of strenuous activity." Weisenseel Aff. at ¶ 7. Plaintiff's physician does not, however, suggest that this limitation rises to the level required by the ADA definition of disability, *i.e.*, that plaintiff is either totally unable to walk, or is *significantly* limited in comparison with the average person. *See* 29 C.F.R. § 1630.2(j)(1).

The Court is persuaded by defendant's interpretation of Dr. Weisenseel's testimony to the effect that plaintiff's heart disease " 'limits his ability to walk and to undertake any *other* form of strenuous

activity.' " Def. Br. at 9–10 (quoting Weisenseel Aff. at ¶ 7) (emphasis added). Dr. Weisenseel's use of the word "other" clearly sheds light on the words that precede it. Although the Court must construe ambiguities in favor of plaintiff, the Court cannot construe this portion of the Weisenseel affidavit in a way that renders the whole dubious, which would be the result if the Court interpreted "ability to walk" to mean walking under normal, everyday circumstances. If the Court were to adopt such a construction, it would be unable to explain Dr. Weiseenseel's reference to "other form[s] of strenuous activity," which unambiguously has "ability to walk" as its antecedent. Taken as a whole, Dr. Weisenseel's statement indicates that plaintiff's heart disease limits his ability to undertake strenuous activities, including *strenuous* walking. While the Court does not doubt that walking is, in some situations, a strenuous activity, the Weiseenseel affidavit does not suggest that plaintiff's ability to walk is limited under normal circumstances. As such, the Dr. Weiseenseel's testimony does not lend support to the proposition that plaintiff's heart disease significantly limits the major life activity of walking.

Plaintiff's other source of evidence is his own deposition testimony, which ultimately undermines his effort to establish that his heart disease, as treated, prevents him from walking under routine circumstances. Both parties direct the Court's attention to the same portion of plaintiff's deposition, in which plaintiff discusses his heart disease. Responding to questions regarding the limitations posed by his heart condition, plaintiff stated that "mountain climbing" and "the Tour de France" were no longer possible for him. Epstein Dep. at 156. Elaborating on this statement, plaintiff remarked, "I mean, I can't run up six flights of stairs, there is [sic] things the doctor has advised me not to do." *Id.* Asked whether his condition "changed substantially" his "normal life before and after the onset of this condition," plaintiff said

that it had not. *Id.* at 157. Thus, plaintiff's own testimony suggests that his heart disease limits only his ability to engage in vigorous physical exercise, not his ability to walk under ordinary circumstances.

Plaintiff's counsel maintains that plaintiff's remarks refer solely to one symptom of his heart disease, angina pectoris, and therefore do not accurately convey the extent of the limitations posed by his heart condition. However, a more careful reading of plaintiff's deposition transcript belies this claim. First, the course of counsel's questioning, beginning with the impact of his heart disease and turning to the impact of his diabetes, suggests a general discussion of his heart condition rather than a narrow inquiry regarding his angina. When defendant's counsel asked plaintiff about the "heart attacks" he suffered during the course of his employment by defendant, plaintiff stated that these episodes were not heart attacks, but angina attacks. Plaintiff stated that he has had angina for more than 20 years, during which time he had also suffered two "silent heart attacks." In the course of the deposition, defendant's counsel and plaintiff both use the terms "heart disease," "heart attacks," and "angina" almost interchangeably. While plaintiff's counsel is correct that this is, medically speaking, an improper equation, the Court finds plaintiff's testimony that his "normal life" is not affected by his "condition" to be an unambiguous statement regarding his heart condition in general, not a particularized remark regarding the symptom of angina.

In order to succeed on his ADA claim, plaintiff must demonstrate that his heart disease substantially limits his ability to walk under ordinary circumstances. To avoid the obvious consequence of his admission that his heart condition imposes no such limitation, plaintiff now argues that his deposition testimony related solely to angina, one particular symptom of his heart disease. Such a reading of plaintiff's deposition is implausible, at best. In ef-

fect, plaintiff asks the Court to draw two rather improbable conclusions: 1) that plaintiff's testimony regarding his inability to climb mountains, race bicycles, or run up several flights of stairs, referred *only* to the symptom of angina; and 2) had defendant's counsel asked plaintiff about the *other* symptoms of his heart disease, he would then—but only then—have mentioned that his heart disease also prevented him from walking under ordinary circumstances. Even assuming, *arguendo*, that plaintiff is capable of parsing out which of his physical limitations are caused by angina and which are caused by other symptoms of heart disease, it is inconceivable to the Court that plaintiff would omit mention of a significant limitation to his mobility when asked by opposing counsel what sorts of physical limitations he experienced, regardless of whether he believed the question went to his angina or his heart disease in general. It is simply not credible that one who—in order to succeed on his ADA claim—must demonstrate that he is virtually unable to walk under ordinary circumstances, would testify that his primary physical restrictions are the inability to join the Tour de France or climb mountains in Peru. Plaintiff's failure to mention even once in his deposition that he experiences difficulty *walking* speaks volumes.

Even assuming that plaintiff's ability to walk is somewhat impaired, he offers no evidence to suggest that "his affliction is any worse than is suffered by a large portion of the nation's adult population," *Colwell,* 158 F.3d at 644, many of whom are overweight, in poor physical condition, or for some other reason unable to engage in the vigorous physical exercise plaintiff describes. Thus, as with each of the plaintiffs in *Colwell,* plaintiff fails "to advance evidence sufficient to show that the limitation he suffered with respect to a major life activity was substantial." *Id.* at 645; *see also Muller v. Costello,* 187 F.3d 298, 314 (2d Cir.1999) ("Simply put, there is not enough evidence ... to find a substantial

limitation of that life activity.") Accordingly, plaintiff fails to satisfy the requirements for a prima facie case under the ADA, and defendant is entitled to summary judgment on this claim.

## II. Plaintiff's NYHRL Claim

Defendant argues that the Supreme Court's recent decisions in *Albertsons, Murphy,* and *Sutton* likewise require reconsideration of the Court's denial of summary judgment on plaintiff's NYHRL claim. Because the ADA and NYHRL are analytically distinct, defendant's attempt to apply the Supreme Court's construction of the ADA to plaintiff's state law claim is inappropriate.

Although the legislative purpose in drafting the NYHRL was "to enact a definition of disability coextensive with comparable federal statutes," *Reeves,* 140 F.3d at 155, the New York Court of Appeals has made it extremely clear that the NYHRL definition of disability is to be construed more broadly than the federal definition. *See State Division of Human Rights v. Xerox Corp.,* 65 N.Y.2d 213, 491 N.Y.S.2d 106, 480 N.E.2d 695 (N.Y.1985); *see also Weissman v. Dawn Joy Fashions, Inc.,* —— F.3d ——, ——, 2000 WL 714377 at *8 (2d Cir. June 5, 2000) (per curiam) (citing *Reeves,* 140 F.3d at 155), *Ditullio v. Village of Massena,* 81 F.Supp.2d 397, 409 (N.D.N.Y.2000), *Franklin v. Consolidated Edison Co. of New York, Inc.,* 1999 WL 796170 at *7 (S.D.N.Y. Sept.30, 1999) (N.Y.HRL requires only "an impairment, not an impairment that substantially limits a major life activity."); *In re Delta Air Lines v. New York State Division of Human Rights,* 91 N.Y.2d 65, 73, 666 N.Y.S.2d 1004, 689 N.E.2d 898, 902 (N.Y. 1997). The Second Circuit has been unambiguous about its duty to follow the holdings of the New York Court of Appeals on this question of New York law. *See Reeves,* 140 F.3d at 155–56 (citing *Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967); *West v. American Tel. & Tel. Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940)).

In *Xerox,* the New York Court of Appeals held that, while the ADA required a showing of an "impairment which substantially limits one or more of such person's major life activities[,] ... in New York, the term 'disability' is more broadly defined." *Xerox,* 65 N.Y.2d at 218–19, 491 N.Y.S.2d 106, 480 N.E.2d at 698 (internal citations omitted). The Court noted that, under the NYHRL, "disabilities are not limited to physical or mental impairments, but may also include 'medical' impairments.... [T]o qualify as a disability, the condition may manifest itself in one of two ways: (1) by preventing the exercise of a normal bodily function or (2) by being 'demonstrable by medically accepted clinical or laboratory diagnostic techniques.' " *Id.* (quoting N.Y. Exec. Law § 292(21)).

" 'Thus, an individual can be disabled under the [NYHRL] if his or her impairment is demonstrable by medically accepted techniques; it is not required that the impairment substantially limit that individual's normal activities.' " *Reeves,* 140 F.3d at 155 (quoting *Hazeldine,* 954 F.Supp. at 706)).

Here, as in *Reeves,* defendant does not dispute that plaintiff's medical conditions were diagnosed by a licensed physician, nor does it "appear to challenge the reliability or accuracy of this diagnosis, nor [has it] suggested that the diagnosis was not based upon 'medically accepted clinical ... diagnostic techniques.' " *Reeves,* 140 F.3d at 156 (quoting N.Y. Exec. Law § 292(21)).[2] Thus, resolving all ambiguities in favor of plaintiff, the Court finds that plaintiff's type 2 diabetes and heart disease, even as treated, remain "medical" disabilities within the meaning

---

2. Indeed, in his affidavit Dr. Weisenseel specifically asserts that both of plaintiff's diagnoses were made "utilizing medically accepted clinical and laboratory diagnostic techniques." Weisenseel Aff. at ¶¶ 3, 8.

of the NYHRL. Because the New York Court of Appeals has made clear that the NYHRL does *not* track federal disability law, the Supreme Court's recent pronouncements on the application of the ADA are irrelevant to proper construction of the New York statute.

As the NYHRL definition of disability is significantly broader than the ADA definition, the Court held in *Epstein I* that plaintiff had necessarily stated a prima facie case under New York law because he had already succeeded in doing so under the ADA. *See Epstein I*, 21 F.Supp.2d at 405–06. Because the Court now holds that plaintiff fails to state a claim under the stricter requirements of the ADA, it must consider anew whether plaintiff states a prima facie case under the NYHRL.

Under the NYHRL, "[a] complainant states a prima facie case of discrimination if the individual suffers from a disability and the disability caused the behavior for which the individual was terminated." *McEniry v. Landi*, 84 N.Y.2d 554, 558, 620 N.Y.S.2d 328, 644 N.E.2d 1019, 1021 (N.Y. 1994). Here, the Court finds that plaintiff is clearly disabled within the meaning of the NYHRL. Although plaintiff has not proved a causal relationship between his disability and his termination, the New York courts have held that petitioners can state a prima facie case under the NYHRL by *either* "(a) show[ing] that they were replaced by a person who did not have their alleged disability; or (b) produc[ing] direct evidence of discriminatory conduct." *Delta Air Lines, Inc. v. New York State Division of Human Rights*, 229 A.D.2d 132, 652 N.Y.S.2d 253, 258 (1st Dep't 1996), *aff'd*, 91 N.Y.2d 65, 666 N.Y.S.2d 1004, 689 N.E.2d 898 (N.Y.1997). Plaintiff has clearly satisfied the first of these two alternatives, as indicated by the Court's earlier finding that the timing of plaintiff's discharge and the hiring of his replacement, taken together with the disparity between the physical condition of plaintiff and that of his replacement, give rise to an infer-

ence of discrimination. *See Epstein I*, 21 F.Supp.2d at 404.

As plaintiff has stated a prima facie case under the NYHRL, the burden of production shifts to defendant to rebut the presumption of discrimination by producing admissible evidence of legitimate, nondiscriminatory reasons for plaintiff's termination, a burden-shifting approach virtually identical to the *McDonnell Douglas* standard. *See Song v. Ives Laboratories, Inc.*, 957 F.2d 1041, 1046 (quoting *Matter of Miller Brewing Co. v. State Div. of Human Rights*, 66 N.Y.2d 937, 939, 498 N.Y.S.2d 776, 489 N.E.2d 745, 747 (N.Y. 1985)); *see also, e.g., O'Connor v. Frawley*, 175 A.D.2d 781, 573 N.Y.S.2d 675, 676 (1st Dep't 1991). The Court held in *Epstein I* that "defendant has satisfied its de minimus burden of proffering a legitimate, non-discriminatory reason for plaintiff's discharge," *Epstein I*, 21 F.Supp.2d at 405, and that plaintiff had likewise succeeded in raising a "genuine issue of material fact as to whether defendant's explanation for his discharge is a mere pretext for discrimination." *Id.*

Accordingly, because plaintiff has stated a prima facie case of discrimination under New York law, and because factual issues remain as to defendant's motive for terminating plaintiff, defendant's renewed motion for summary judgment on plaintiff's NYHRL claim is hereby denied.

## CONCLUSION

For the reasons stated above, defendant's renewed motion for partial summary judgment is hereby granted in part and denied in part. Defendant's motion to dismiss plaintiff's claim under the Americans with Disabilities Act is GRANTED, and that claim is dismissed with prejudice. Defendant's motion to dismiss plaintiff's claim under the New York Human Rights Law is DENIED. Plaintiff's claim under the Age Discrimination in Employment Act of 1967 is unaffected by this Opinion and Order and remains pending before the Court.

The parties are ordered to appear for a pre-trial conference in Courtroom 18B, 500 Pearl Street, New York, New York, on July 13, 2000, at 10:00 a.m. Notwithstanding the pendency of defendant's motions *in limine* and for a bifurcated trial, the parties are further ordered to amend their joint pre-trial order, trial briefs, and proposed voir dire and jury charge where appropriate to conform to this Opinion and Order; such documents must be filed with the Court on or before the July 13 conference.

**SO ORDERED.**