**In re Leo Patrick ROLAND, Debtor.**

**Marjorie Thompson, Plaintiff,**

v.

**Leo Patrick Roland, Defendant.**

**Bankruptcy No. 02–13030(SMB).
Adversary No. 02–3125(SMB).**

United States Bankruptcy Court,
S.D. New York.

June 24, 2003.

Carlos J. Cuevas, Yonkers, NY, for Plaintiff.

Goldberg, Scudieri, Lindenberg & Block, P.C., Ivy Alexander, of Counsel, New York City, for Defendant.

### POST–TRIAL DECISION AND ORDER

STUART M. BERNSTEIN, Chief Judge.

The plaintiff brought this adversary proceeding, *inter alia*, for a determination that the debtor's obligation to pay attorney's fees was non-dischargeable under 11 U.S.C. § 523(a)(5) or (a)(15). The Court conducted a one-day trial at which both parties testified, and several exhibits were received in evidence. The record adduced at the trial compels the conclusion that the plaintiff failed to prove a right to attorney's fees under applicable non-bankruptcy law. Accordingly, judgment will be entered dismissing the adversary proceeding.

### BACKGROUND

The plaintiff and the debtor were formerly married,[1] and have a son, Sébastien. In January 2001, and while still married, the parties contracted to buy a house located at 340 Bellevue Avenue in Yonkers (the "Property"). The defendant borrowed $25,000.00 from his pension to make the down payment. (*See* Trial Transcript, dated May 6, 2003 ("Tr."), at 41.) The parties separated three months later, (Tr. 41)[2], and the debtor informed the plaintiff that he did not want to proceed with the purchase. (*Id.*) However, when the debtor advised the broker to call off the purchase, the broker warned him that he would lose the down payment if he backed out. (*Id.*)

### A. The Parties' Agreement

To avoid losing the down payment, and to provide, *inter alia*, for Sébastien's custody and support, the parties entered into a three page agreement drafted by the plaintiff, an attorney, on July 9, 2001 (the "Agreement")(Trial Exhibit ("TX") 9.) The Agreement contained the following material terms:

1. The parties would purchase the Property as tenants in common, but live apart.

2. The plaintiff would live with Sébastien at the Property, and have sole financial responsibility for the Property.

3. The plaintiff acknowledged an obligation to the debtor in the net amount of $22,950.00, the amount of the deposit less certain offsets.

4. The debtor agreed to pay monthly child support in the sum of $600.00, but the obligation would be deducted from the amount owed by the plaintiff to the debtor. In essence, the plaintiff would fund the debtor's child support payments, at least until the debtor had exhausted his credit. Once the credit was exhausted, the debtor would transfer his interest in the Property to the plaintiff upon her request.

The Agreement addressed the sale of the Property in only one place. The debtor promised not to "compel, coerce or exert any pressure upon [the plaintiff] to sell the premises against her wishes."

---

1. The plaintiff has questioned the validity of the Haitian divorce procured by the debtor. The dispute is not material to the resolution of the matter before me, and I will assume for the purposes of this opinion that they were divorced.

2. The transcript says that they broke up in April 2000, but this appears to be an error in the testimony or the transcription. The record indicates that the date of the break up should read "April 2001."

Finally, the Agreement contained reciprocal provisions relating to indemnification which are critical to the parties' dispute:

Except as otherwise expressly set forth herein, the HUSBAND represents and agrees that he has not heretofore, nor will he hereafter, incur or contract any debt, charge, obligation or liability whatsoever for which the WIFE is or may become liable in relation to this transaction. The HUSBAND agrees to indemnify and hold the WIFE harmless of all loss, expenses (including reasonable attorneys' fees) and damages in connection with or arising out of a breach by the HUSBAND of his foregoing representation and agreement.

Except as otherwise expressly set forth herein, the WIFE represents and agrees that she has not heretofore, nor will she hereafter, incur or contract any debt, charge, obligation or liability whatsoever for which the HUSBAND is or may become liable in relation to this transaction. The WIFE agrees to indemnify and hold the HUSBAND harmless of all loss, expenses (including reasonable attorneys' fees) and damages in connection with or arising out of a breach by the WIFE of her foregoing representation and agreement.[3]

The parties lived under the Agreement for approximately one year. During this period, the plaintiff deducted the debtor's monthly child support obligation from the amounts she owed to the debtor. (TX 4, *Declaration of Marjorie Thompson, Esq.*, dated June 23, 2002 ("*Thompson Decl.*"), at ¶ 10.) In May 2002, the plaintiff located a buyer for the Property at a selling price of $398,000.00. (*See id.* ¶ 2 & Ex. B.) She transmitted the Contract of Sale to the debtor and asked him to execute it. (Tr. 42.) He refused, arguing that he was coerced into signing the Agreement, and did not agree with the proposed split of the sales proceeds. (*Id.* 43–44.)

## B. The Pre–Petition Litigation

The plaintiff commenced an action against the debtor in state supreme court, and simultaneously moved by order to show cause to compel the debtor to cooperate in the sale of the Property. (TX 4, *Thompson Decl.* ¶¶ 11–12.) The plaintiff based her right to relief on the Agreement, arguing that the debtor had breached it by refusing to cooperate with the sale. (*See id.* ¶ 11.)

The debtor appeared *pro se* on the June 13 return date, and requested an adjournment which the court denied. The court also overruled his objection to the sale, ordered the Property to be sold, and authorized the plaintiff to sign the debtor's name to the contract of sale.[4] The state court's decision was based on its interpretation of the Agreement as "an agreement that this property be sold," (TX 4, *Thompson Decl.*, Ex. E, at 9), and, "in essence," the state court granted "summary judgment to [the plaintiff] that the house be sold in accordance with the agreement." (*Id.*, at 12–13.) On July 10, 2002, the state court signed an order consistent with its ruling at the June 13, 2002 hearing. (TX 6, *Declaration of Marjorie J. Thompson,*

---

3. The Agreement also includes a promise to hold the "draftsperson" harmless from liability "resulting in any potential discrepancy or actions regarding this Agreement." The plaintiff has not relied on this provision, but in any event, her claim against the debtor does not arise from any liability as the "draftsperson."

4. The state court directed the plaintiff to place the proceeds in escrow pending further order of the court. The proceeds were eventually divided pursuant to a stipulation between the plaintiff and the chapter 7 trustee that was approved by this Court.

*Esq. in Support of Motion to Modify Automatic Stay,* dated Sept. 23, 2002, Ex. D.)

## C. The Bankruptcy Proceedings

The debtor filed this chapter 7 case on June 20, 2002, after the hearing but before the state court had signed the order.[5] The plaintiff thereafter commenced this non-dischargeability proceeding on or about September 23, 2002. Although the complaint sought various forms of relief, the only remaining issue tried to the Court involved the non-dischargeability of the legal fees incurred in enforcing the Agreement under either 11 U.S.C. § 523(a)(5) or § 523(a)(15)[6]. The undisputed documentary evidence showed that the plaintiff incurred $2,545.00 in legal fees and expenses

in connection with the state court proceedings, and an additional $9,450.00, through December 18, 2002, in connection with the bankruptcy case. (TX 8.) She further testified that her fees as of that time of the trial totaled approximately $14,000.00. (Tr. 20.)

## DISCUSSION[7]

Section 523(a) excepts certain debts from the effect of the general discharge granted to an individual debtor under 11 U.S.C. § 727. A "debt" is a liability on a claim, 11 U.S.C. § 101(12), and a "claim" is a right to payment, 11 U.S.C. § 101(5)(A), which the Supreme Court has defined as "nothing more nor less than an enforceable obligation." *Cohen v. de la Cruz,* 523 U.S.

---

5. The debtor has not contended that the entry of the order was in violation of the automatic stay or void.

6. Section 523(a) states in relevant part:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \*

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

\* \* \* \*

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection

with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor. . . .

7. The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157, and the District Court's General Order of Reference, dated July 10, 1984. The parties have consented to the Court's core jurisdiction. (*See Pre–Trial Order,* dated Mar. 13, 2003, at ¶ 1)(ECF Doc. no. 7.)

213, 218, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998)(quoting *Pennsylvania Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 559, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990)).

 Accordingly, every dischargeability proceeding involves two separate inquiries. First, does the creditor hold an enforceable obligation under non-bankruptcy law. Second, is the debt non-dischargeable under bankruptcy law, specifically § 523(a). *Resolution Trust Corp. v. McKendry (In re McKendry)*, 40 F.3d 331, 337 (10th Cir.1994); *Richardson v. Hidy Honda, Inc. (In re Richardson)*, 221 B.R. 956, 961 (D.Wyo.1998); *Edwards v. Sieger (In re Sieger)*, 200 B.R. 636, 639 (Bankr. N.D.Ind.1996); *see In re Moran*, 152 B.R. 493, 495 (Bankr.S.D.Ohio 1993); *see generally* Alan M. Ahart & Stacy M. Hopkins, *The Role of Nonbankruptcy Law in Dischargeability Proceedings: Unenforceable Obligations Must Not Survive Discharge While Enforceable Obligations May Be Excepted from Discharge*, 7 J. Bankr.L. & Prac. 161, 166–67 (1998). In the absence of an enforceable obligation, there is no "debt" that can be non-dischargeable. *In re Mills*, 841 F.2d 902, 904–05 (9th Cir.1988)(dismissing non-dischargeability proceeding based on determination that state law anti-deficiency statute barred creditor's claim for waste); *Quarre v. Saylor (In re Saylor)*, 178 B.R. 209, 214–15 (9th Cir. BAP 1995)(dismissing non-dischargeability proceeding based on creditor's failure to show that the debtor's fraudulent transfer gave rise to a claim for damages under state law); *Steed v. Shapiro (In re Shapiro)*, 180 B.R. 37, 42 (Bankr.E.D.N.Y.1995)(dismissing non-dischargeability proceeding based on determination that creditor's state law claim, grounded in sexual misconduct, was time-barred).

Here, the plaintiff contends that the debtor breached the Agreement by refusing to sell the Property, and his breach triggered her right to recover attorney's fees under the indemnification provision quoted above. (Tr. 74–75.) As noted, the state court construed the Agreement as "an agreement that this property be sold," (TX 4, *Thompson Decl.*, Ex. E, at 9), and "in essence," granted "summary judgment to [the plaintiff] that the house be sold in accordance with the agreement." (*Id.*, at 12–13.) While the debtor may legitimately quarrel with the state court's interpretation of the Agreement, he is foreclosed under the *Rooker–Feldman* doctrine from arguing in this Court that his refusal to consent to the sale did not constitute a breach of the Agreement.[8] Any review of the state court's decision must be sought in the state appellate courts.

 This conclusion also seems to cut off any challenge to the plaintiff's contractual right to recover her attorney's fee under the Agreement. Although the state court did not decide this issue, the parties' counsel stipulated that "[t]he Agreement provides that the Plaintiff is entitled to be indemnified for all her legal fees and expenses connected with the enforcement of the Agreement." (*Pre–Trial Order*, dated Mar. 13, 2003, ¶ 4.G.)[9] Clearly, most if not

---

8. The doctrine prevents a party that has lost in state court from seeking what amounts to appellate review of the state court judgment in a United States court, except through the grant of a petition for a writ of certiorari by the United States Supreme Court. *Johnson v. De Grandy*, 512 U.S. 997, 1005, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994); *see District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

9. The pre-trial order was drafted by the plaintiff's counsel; the debtor's counsel failed to provide any input. At the final pre-trial con-

all of the plaintiff's attorney's fees emanate from the debtor's refusal to consent to the sale. Ordinarily, admissions and stipulations of fact are binding on the parties and the court. *Fisher v. First Stamford Bank & Trust Co.*, 751 F.2d 519, 523 (2d Cir. 1984); *PPX Enters., Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 123 (2d Cir.1984).

 There are, however, three well-recognized exceptions to this general rule.[10] First, the parties cannot create a case by stipulating to facts that do not exist. *Sinicropi v. Milone*, 915 F.2d 66, 68 (2d Cir.1990); *PPX Enters., Inc. v. Audiofidelity, Inc.*, 746 F.2d at 123. Second, the court is not bound by the stipulation if its acceptance would be manifestly unjust, or the evidence contrary to the stipulation is substantial. *Sinicropi v. Milone*, 915 F.2d at 68; *PPX Enters., Inc. v. Audiofidelity, Inc.*, 746 F.2d at 123; *Epstein v. Kalvin–Miller Int'l, Inc.*, 100 F.Supp.2d 222, 225 (S.D.N.Y.2000). Third, a court is not required to accept a stipulation regarding a question of law. *United States v. John J. Felin & Co.*, 334 U.S. 624, 640, 68 S.Ct. 1238, 92 L.Ed. 1614 (1948); *Swift & Co. v. Hocking Valley Ry. Co.*, 243 U.S. 281, 289–90, 37 S.Ct. 287, 61 L.Ed. 722 (1917); *Sinicropi v. Milone*, 915 F.2d at 68; *Fisher v. First Stamford Bank & Trust Co.*, 751 F.2d at 523.

 The third exception clearly applies to this case, and I need not consider the other two. The interpretation of a contract or written instrument presents a question of law. *Swift & Co. v. Hocking Valley Ry. Co.*, 243 U.S. at 289–90, 37

S.Ct. 287; *Adirondack Transit Lines, Inc. v. United Transp. Union*, 305 F.3d 82, 85 (2d Cir.2002)(proper interpretation of an unambiguous contract is a question of law). Consequently, a stipulation regarding the interpretation of a contract does not bind the court. *Marden v. International Ass'n of Machinists & Aerospace Workers*, 576 F.2d 576, 580 (5th Cir.1978)(court may disregard parties' stipulation that collective bargaining agreement mandated union membership); *Estate of Connelly v. United States*, 398 F.Supp. 815, 817 (D.N.J. 1975)(court not bound by stipulation regarding interpretation of annuity contract which contravenes its plain language), *aff'd*, 551 F.2d 545 (3d Cir.1977); *Mulcahy v. Indianapolis Morris Plan Corp. (In re Mulcahy)*, 3 B.R. 454, 456 (Bankr.S.D.Ind. 1980)(court may disregard stipulation regarding interpretation of security agreement).

 The interpretation of the indemnification provisions in the Agreement is a question of law, and the Court may, therefore, disregard the stipulation to the extent it explains the circumstances under which the Agreement provides for the recovery of attorney's fees. The Agreement, in this regard, unambiguously forecloses the plaintiff's claim for attorney's fees. The reciprocal indemnification provisions in the Agreement did not cover all breaches. Rather, they were limited to the situation where one party had incurred or thereafter incurred a debt for which the other party was liable. Thus, even if the debtor breached the Agreement by refus-

---

ference held on March 13, 2003, the Court asked the debtor's counsel if she had any objections to the proposed pre-trial order. In response, she added one factual contention, one witness and one exhibit. These changes were made by the Court. She did not contest the "Undisputed Facts" which contained the concession regarding attorney's fees quoted in the accompanying text.

10. After the trial, the Court asked the parties to submit memoranda on the question of whether the Court was bound by the stipulation regarding the meaning of the Agreement. The plaintiff's counsel complied with the request. The debtor's counsel, however, failed to address the issue in her post-trial brief.

ing to consent to the sale of the Property, the breach did not trigger the plaintiff's contractual right to recover her attorney's fees.

Finally, the plaintiff's argument that the doctrine of law of the case binds the parties and the Court to the terms of the stipulation lacks merit. The doctrine of law of the case is based on the principle that "'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir.1964)). The pre-trial order, which incorporated the stipulation, was not a decision of the Court.

Accordingly, the plaintiff has failed to demonstrate that she had a right to the payment of her attorney's fees under applicable non-bankruptcy law. Since there is no "debt," there is no non-dischargeable debt, and the plaintiff's claim fails on the merits. The foregoing constitutes the Court's findings of fact and conclusions of law. The clerk is directed to enter a judgment dismissing this adversary proceeding.

SO ORDERED.